**Wilbur P. BOLIUS, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent-Appellee.**

**No. 78–1966.**

United States Court of Appeals,
Fifth Circuit.

June 29, 1979.

---

Gregory H. Fisher, St. Petersburg, Fla., for petitioner-appellant.

William I. Munsey, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before GODBOLD, Circuit Judge, SKELTON *, Senior Judge, and RUBIN, Circuit Judge.

ALVIN B. RUBIN, Circuit Judge:

In this collateral proceeding, 28 U.S.C. § 2254, Wilbur P. Bolius challenges state court convictions for several felonies established by virtue of his own guilty pleas,[1] alleging that the state court should not have accepted his pleas without first conducting an adequate hearing into his men-

---

* Senior Judge, United States Court of Claims, sitting by designation.

1. The convictions were affirmed on direct appeal in state court. *Bolius v. State*, Fla.Dist.Ct. App.1975, 319 So.2d 85.

tal competency.[2] Finding a substantial question as to Bolius's competency at the time of pleading and that sufficient evidence was available to decide the question itself, the district court held a *nunc pro tunc* hearing and determined that Bolius had been competent to plead. Bolius now challenges both the district court's ability to make a meaningful determination of his prior competency and the correctness of the district court's decision. We affirm the district court on both counts.

■ Due process forbids the conviction of an accused person for a crime in a trial held when he is legally incompetent.[3] *Pate v. Robinson*, 1966, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818. *See also Bishop v. United States*, 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835. If the state court fails to conduct an adequate hearing on the question of competency before proceeding with trial or accepting a guilty plea, and the habeas petitioner shows that there then existed "real, substantial and legitimate doubt as to [his] mental capacity," *Bruce v. Estelle*, 5 Cir. 1973, 483 F.2d 1031, 1043 (*Bruce* I), the district court has an obligation to examine the question when it considers the petition for habeas corpus. *See Lee v. Alabama*, 5 Cir. en banc 1967, 386 F.2d 97, 108.

■ Although both the Supreme Court and this circuit are aware of the risks connected with *nunc pro tunc* competency hearings, such inquiries have been allowed if there is sufficient evidence available reasonably to ensure that a reliable determination of competency can be made. *See United States v. Makris*, 5 Cir. 1976, 535 F.2d 899, 904–05, *cert. denied*, 1977, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803, and cases cited therein. We have left to the discretion of the trial court in each case, subject to appellate review, the question of the sufficiency of the evidence to make a retrospective determination of competence. *E. g., Bruce* I, *supra*, 483 F.2d at 1042; *Lee v. Alabama, supra*, 386 F.2d at 108. There was no abuse of discretion here.

■ In *United States v. Makris, supra*, 535 F.2d at 904, we noted that, with "sufficient evidence in the record derived from knowledge contemporaneous to trial," it was appropriate for the trial court to proceed with the retrospective determination. *See also Bruce v. Estelle*, 5 Cir. 1976, 536 F.2d 1051, 1057–58, *cert. denied*, 1977, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (*Bruce* II). In conjunction with other information, even the recollections of people who had the opportunity to form a judgment

2. After pleading not guilty in state court, Bolius moved for a sanity hearing. This motion was denied. However, he was examined by a psychiatrist, Dr. Richard Meadows, who concluded that he was incompetent to stand trial or assist in his defense. Upon motion of the state, the trial court appointed a clinical psychologist, Dr. Sidney Merin, to examine the petitioner. This second expert, disagreeing with the findings of his colleague, concluded that Bolius was competent to stand trial. Bolius later changed his plea to guilty. The public defender told the court that his client understood that, by changing his plea, he waived his possible insanity defense. After questioning Bolius briefly to determine that he understood the charges, the trial court accepted the plea without first expressly determining that Bolius was then competent to plead guilty.

3. The standard for determining the defendant's competency to stand trial in federal court was established in *Dusky v. United States*, 1960, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825:

"whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

We have used the same standard to examine competency to stand trial in state court. *E. g., Bruce v. Estelle*, 5 Cir. 1976, 536 F.2d 1051, 1059, *cert. denied*, 1977, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (*Bruce* II). In the context of a federal habeas case brought under 28 U.S.C. § 2255, we held that the *Dusky* test of mental competency also applies to entering a plea in a federal criminal case. *Malinauskas v. United States*, 5 Cir. 1974, 505 F.2d 649, 650. Although this court has not expressly discussed the issue in the context of a § 2254 habeas challenge to a plea entered in state court, we have no doubt that the same standard applies. *Compare Curry v. Estelle*, 5 Cir. 1976, 531 F.2d 766. *But see Sieling v. Eyman*, 9 Cir. 1973, 478 F.2d 211. *See generally* Comment, *Competence to Plead Guilty: A New Standard*, 1974 Duke L.J. 149 (1974).

about the defendant's mental status when the plea was entered "may in some instances provide a sufficient base upon which a fact-finder may rest his decision" to make a retrospective determination. *Makris, supra,* 535 F.2d at 905.

In this instance, the trial court had available a psychiatric evaluation, a psychological report, both contemporaneous with the defendant's pleas, and a transcript of the rearraignment. It could also refer to the testimony of the state prosecutor and the public defender who were at the rearraignment. While the district court might have had access to a smaller data bank than the ones available to the judges in *Bruce* and *Makris,* we cannot say that it was an abuse of discretion to decide, as an initial matter, that the court would be able to conduct a meaningful *nunc pro tunc* determination of Bolius's competency.

Before considering the correctness of the court's determination of competency, we note the correct standard of appellate review in this federal habeas proceeding. In *Makris, supra,* 535 F.2d at 907, which involved direct review of a federal conviction, we interpreted the Supreme Court's cautious language in *Drope v. Missouri,* 1975, 420 U.S. 162, 175 n. 10, 95 S.Ct. 896, 905, 43 L.Ed.2d 103, 115,[4] to mean that, while the clearly erroneous rule applies to the lower

court's findings of fact on the question of competency, "we should take a hard look at the trial judge's ultimate conclusion and not allow the talisman of clearly erroneous to substitute for thoroughgoing appellate review of quasi-legal issues." In *Bruce* II, *supra,* 536 F.2d at 1058, we found this standard [5] applicable to our review of district court findings of competency in state habeas cases.

The district court expressly relied on five factors, set forth in the margin,[6] in reaching its conclusion. We agree with Bolius's appellate counsel that the testimony of trial counsel cannot be treated as evidence coming from a totally disinterested witness. Had counsel testified to anything other than Bolius's competence to plead guilty, he would have placed himself in an awkward ethical position by revealing that he had allowed his client to plead guilty at a time when he personally believed Bolius to be incompetent. For a similar reason, we believe that the testimony of Bolius's competence offered by the state prosecutor must also be discounted. The prosecutor could not have testified to a subjective belief that Bolius was incompetent without opening himself to a charge that he negotiated for and recommended that the court accept a plea from a defendant whom he believed incompetent. We have no reason

---

4. Quoting *Watts v. Indiana,* 1949, 338 U.S. 49, 51, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801, 1802, the Supreme Court said:

 "But 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this Court's adjudication. Especially in cases arising under the Due Process Clause it is important to distinguish between issues of fact that are here foreclosed and issues which, though cast in the form of determinations of fact, are the very issues to review which this Court sits."

5. Judge Clark called it "[t]he combination hard look/clearly erroneous formulation." 536 F.2d at 1058.

6. "(1) [T]he transcript of the rearraignment which indicated that Plaintiff was aware of the nature of the charges against him and that he was aware of the consequences of entering a guilty plea; (2) the report and testimony of Dr. Merin indicating that Petitioner was able to give a clear and coherent account of his involvement in the alleged offenses during a five hour clinical examination, and that Petitioner was in touch with reality, possessing both recent and remote memory; (3) the deposition of Dr. Meadows in which he stated that Petitioner gave a clear and coherent account of the crimes for which he was charged; (4) the testimony of William R. Webb, [state prosecutor] relating to Petitioner's demeanor during rearraignment, and most significantly, (5) the testimony of Petitioner's trial counsel, Jeffery Myers, to the effect that Petitioner was able to relate facts to him coherently, that Petitioner had his senses under control, and that he was in command of the situation."

to doubt the veracity of the witnesses; we are merely suggesting that the weight of their testimony must be discounted by the possibility of a conflict of interest that we have mentioned. *See Bruce II, supra,* 536 F.2d at 1061–62. We see no indication in the record that the district court considered the potential conflict as part of the process of weighing the credibility of the witnesses. To the contrary, the court called the testimony of the defense counsel at trial the "most significant" factor in the determination of competence. *See* note 6, *supra.*

The transcript of the re-arraignment was also one of the listed factors. Our examination of the transcript reveals that Bolius coherently answered all the questions of the court. The questions covered Bolius's family, employment, and prison record, as well as his understanding of the significance of pleading guilty. We are well aware that a printed record cannot reveal the subtle indicia of a person's true mental state as well as direct observation. *Bruce II, supra,* 536 F.2d at 1062. However, this record is far from worthless. While the bare transcript alone may not have been sufficient, the court quite reasonably could have based its decision in part on its reading of the record of the proceeding.

The district court also had available the contemporaneous opinions of the two experts (in the form of written reports), as well as their retrospective views (one in the form of a deposition and the other by way of testimony at the competency hearing). In this appeal, defense counsel does not dispute that the district court was obliged to make its own determination of competency after weighing the conflicting views of the two experts. Counsel's only complaint is that the district court's credibility choice between the two experts was colored by the fact that only one expert, Dr. Merin, testified in person at the competency hearing. However, no reason is offered to explain why Bolius's counsel did not bring the other expert, Dr. Meadows, to the hearing

or attempt to have him subpoenaed.[7] Moreover, we have no indication that the physical presence of only one expert had any deleterious effect on the district court's decision. Depositions are, of course, fully admissible as evidence in the appropriate circumstance. *See* F.R.Civ.P. 32(a).

Finally, Bolius has alleged that certain evidence was omitted from the record, denying him a complete determination of his competency. While there may have been other potential evidence, such as the testimony of relatives and other medical records, Bolius's counsel has given no indication why he was unable to put this information into evidence. There is no reason to lay the blame for these omissions on the trial judge.

 Our review of the evidence indicates that, although the trial court did not make a specific finding on the question, Bolius may well have been suffering from a form of schizophrenia at the time he entered his plea. If he was not suffering from any illness or other mental disability, then Bolius's claim of incompetency immediately fails. *See Bruce II, supra,* 536 F.2d at 1060. However, the mere presence of mental illness or other mental disability at the time Bolius entered his plea does not necessarily mean that he was incompetent to plead under the *Dusky* test. *Dusky v. United States,* 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. The mental illness or disability must have been so debilitating that Bolius was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings. *See* note 3, *supra.* While we have expressed our skepticism of the value of some of the evidence available to the district court, we do not find that the court's determination of competence was incorrect. The court had to resolve conflicts in the evidence; however, what was presented in favor of a determination of competency was weighty enough to sustain the judge's assessment of the scales. *Compare Bruce II,*

7. Two weeks after the evidentiary hearing was held in the Tampa Division of the Middle District of Florida, the deposition of Dr. Meadows was taken in Tampa and made part of the record. The deposition does not reveal why Dr. Meadows did not appear at the hearing.

*supra*, 536 F.2d at 1062–63. Therefore, we AFFIRM the district court.[8]

---

**8.** In affirming the district court, we pretermit the question of our jurisdiction to consider this appeal on the merits. *Compare Browder v. Director, Dept. of Corrections*, 1978, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521, and *In re Morrow*, 5 Cir. 1974, 502 F.2d 520 *with Fidelity & Deposit Co. v. USAFORM Hail Pool, Inc.*, 5 Cir. 1975, 523 F.2d 744, *cert. denied*, 1976, 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194, and *Smith v. Jackson Tool & Die, Inc.*, 5 Cir. 1970, 426 F.2d 5 (per curiam).