COURT
OF APPEALS

                                      SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-298-CR

 

 

EX
PARTE 

 

 

 

THEODORE WILKINSON



 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Appellant Theodore Wilkinson appeals from
the trial court=s denial of his application for
writ of habeas corpus filed pursuant to article 11.072 of the Texas Code of
Criminal Procedure.  See Tex. Code Crim. Proc. Ann. art. 11.072 (Vernon 2005).  In two issues, Appellant argues (1) he was
incompetent to stand trial when he pleaded guilty to attempted burglary and (2)
his appointed counsel at the time of the plea hearing rendered ineffective
assistance by failing to request a competency hearing.  We grant his requested relief and reverse and
remand.

                                            Background

Appellant has a long history of mental
illness.  He has been under the care of
Denton County MHMR for fourteen years, has been diagnosed with Abipolar
disorder, delusional disorderCparanoid,
grandiose and persecutory ideation, polysubstance abuse, [schizoaffective]
disorder, and narcissistic personality disorder,@
has been hospitalized for mental illness several times, and has a history of
failing or refusing to take his medications. 


In late November 2003, Denton police officer
Brandon Rana was dispatched in response to a suspicious-person call when a
witness reported a man with a briefcaseCAppellantCrepeatedly
attempting to break into an apartment. 
Appellant told witnesses that he was attempting to retrieve a computer
hard drive from the apartment and that he had been authorized by the district
attorney to do so.  Appellant left the
scene before Officer Rana arrived. 

The Attempted Burglary








Later that night, Officer Rana saw Appellant
attempting to remove a window screen from the same apartment with a tool that
was later determined to be a butter knife. 
Appellant had also tied two spoons to the apartment=s
door with red and black speaker wire. 
When Officer Rana approached Appellant and identified himself, Appellant
walked briskly over to him and said in a loud voice, AI
am a CIA agent.  Sergeant, you need to
disarm yourself.@ 
When Officer Rana reached for his pepper spray, Appellant fled through
an open window into another apartment. 
Officer Rana entered the apartment, found Appellant lying on a mattress
in the middle of the apartment=s
living room, and arrested him.   

The Plea of Guilty








Appellant was indicted for attempted
burglary of a habitation, a third degree felony.  The trial court appointed attorney Ronald
Vanzura to represent him.  Vanzura did
not request a competency hearing.  On
April 8, 2004, pursuant to a plea bargain, Appellant pleaded guilty to the
charge.  At the sentencing hearing, the
trial court placed him on four years=
deferred adjudication community supervision. 
The community supervision order recites that Ait
plainly appear[ed] to the Court that the said defendant is mentally competent .
. . .@ 
However, the presentence investigation report completed on April 29,
2004, states that A[Appellant]
appears to be a poor candidate for probation. 
He suffers from mental illness and often forgets or refuses to take his
prescribed medications.@  The presentence report further observed that
Appellant suffers from Adelusional
thinking@ and appears not to be in touch
with reality and recommended that he have a complete psychiatric workup and be
added to the MHMR caseload.[1]


Motion to Proceed to
Adjudication

On October 29, 2004, the State filed a
motion to proceed to adjudication, alleging several violations of the
conditions of community supervision, including an allegation that Appellant
threatened to Ablow up everyone@
in the apartment complex where he lived. 

Appellant Adjudicated
Incompetent

The trial court appointed new counsel to
represent Appellant in the adjudication proceedings, and counsel immediately
filed a motion requesting a competency examination.  The trial court ordered Dr. Grace Graham, a
psychologist, to conduct the examination. 
On February 24, 2005, based on Dr. Graham=s
report, the trial court determined that Appellant was indeed incompetent and
ordered him committed for 120 days to the North Texas State Hospital at Wichita
Falls.  On June 5, 2005, a sixty-day
extension was recommended by his treating psychiatrist on the ground that he
remained incompetent to stand trial.          








Appellant=s
Incompetency Continues

In July 2005, the trial court ordered a
civil commitment of Appellant for one year based on a treating psychiatrist=s
certification that Appellant suffered from severe mental illness, that he remained
incompetent, and that he was likely to continue to remain so for more than
ninety days.  In December 2005, the trial
court appointed a psychiatrist to examine Appellant again.  That psychiatrist concluded on January 30,
2006, that Appellant continued to suffer from severe mental illness and
remained incompetent to stand trial.  The
trial court ordered another 120-day civil commitment for Appellant, which was
later extended for another sixty days.[2]    

Application for Writ of Habeas
Corpus in Trial Court








In the meantime, after the trial court had
declared Appellant incompetent to proceed to adjudication based on Dr. Graham=s
report, Appellant=s
retained counsel filed an application for writ of habeas corpus in the trial
court in September 2005, challenging the original deferred adjudication order
and alleging that (1) Appellant was incompetent to stand trial when he pleaded
guilty and (2) he had been deprived of his right to effective assistance of
counsel when his previous counsel, Vanzura, failed to request a competency
hearing.  At the request of Appellant=s
counsel, Dr. Graham performed a retrospective competency determination and
concluded that Appellant had been incompetent to stand trial when he pleaded
guilty.  The trial court conducted a
hearing on Appellant=s
application for writ of habeas corpus on July 28, 2006.[3]  Three witnesses testified: Dr. Graham,
Appellant=s father, and Vanzura.

Dr. Graham=s
Testimony








Dr. Graham testified that, to perform her
retrospective competency examination, she interviewed Appellant and reviewed
his mental health records, police records, emails to his father, and jail
records.  Appellant told her that he had
been recruited by the CIA while he was in jail. 
He accused his parents of being crazy and said that the President and
Secretary of State were conspiring against him. 
Dr. Graham said that Appellant=s
email from the time of his guilty plea showed Appellant Awas
not of sound mind at all.  He was thick
into his delusion and very ill mentally[.]@  In email to his father shortly before the
guilty plea, Appellant insisted that he worked for the CIA and that the
President wanted to have him killed out of envy for his political ability.  He claimed to be deployed on an operation
code-named AZebra Nile@;
that he had raided the city police, the county sheriff, the jail guard, the
bailiffs, and the judges; that he had been recruited in his cell by a CIA
agent; and that he had received forty-five CIA directives Afrom
the jail cells.@ 
He made similar claims in letters to his father and Vanzura sent a few
weeks after he entered his guilty plea.  

Dr. Graham testified that Appellant was Amore
clear@ when he was taking his
medications, but even then, he was Avery,
very deep into his delusion.@  In Dr. Graham=s
opinion, Appellant had not been in any position to assist his defense attorney
in preparing for his trial, he had not been able to understand the charges
brought against him, he was not able to comprehend the consequence of his plea,
and he was not able to help his defense counsel prepare for his defense. 

Appellant=s
Father=s
Testimony








Appellant=s
father testified that Appellant, who was forty-five years old at the time of
the hearing, began to exhibit mental health problems when he was still in
school in 1985, when he asked a neighbor for a knife so he could sacrifice
himself to Jesus.  Mr. Wilkinson stated
Appellant was treated first at Timberlawn when the family had good insurance,
but he has been under the care of MHMR in Denton County since then.  He testified that communications he received
from Appellant around the time of his guilty plea were delusional about being
employed by the CIA.[4]  He testified that he called Vanzura several
times and wrote a letter to him expressing concern over Appellant=s
competency, but Vanzura never replied. 

Trial Counsel=s
Testimony      








Vanzura admitted that he had no recollection
of Appellant=s mental status when he first
visited him in jail in December 2003 after his appointment to represent
him.  Nor did Vanzura recall the judge
they appeared before at Appellant=s
plea hearing.  Vanzura conducted no
investigation other than to review the probable cause affidavit and talk to the
prosecutor about the case. He did not file a suggestion of incompetency, nor
did he request the court to have Appellant examined by a psychologist.  He did not recall the officer=s
description in the probable cause affidavit of Appellant=s
statement that Appellant thought he was employed by the CIA.  But he did remember receiving several letters
from Appellant while he was in jail, claiming that he was a CIA agent.  








        Vanzura testified that he knew that
Appellant was an AMHMR
client . . . from Judge Windle=s
court [the Denton County Probate Court]@
and that he was Avery knowledgeable of the fact
that [Appellant] had an extensive mental health history.@  At his initial interview with Appellant,
Appellant told him that he had been taking his medication, and Vanzura felt
like he understood the nature of the charge. 
Vanzura testified that he Acould
tell by the changes of the tones of the letter[s] that he was sending me that
he was getting more and more lucid.@  After a court appearance with Appellant on
March 19, 2004, Vanzura wrote in his statement of services, AHe
is lucid and accepts the [plea bargain] offer.@  Vanzura testified that on the day of the
plea, he Awas very concerned that
[Appellant] had capacity . . . to understand.@  He asked Appellant if he understood what he
was doing, and Appellant said Ayes,@
so Vanzura felt that Appellant understood. 
Vanzura testified that Appellant told him he had been taking his
medication Aand under the Strickland
standards, I felt Appellant understood the nature of the charge@
and was able to confer with him.[5]  At the conclusion of the hearing, the trial
court denied Appellant=s
application.[6]
Appellant then perfected this appeal.  

                                       Standard
of Review

To prevail on a writ of habeas corpus, the
proponent must prove his allegations by a preponderance of the evidence.  See Ex parte Thomas, 906 S.W.2d 22, 24
(Tex. Crim. App. 1995), cert. denied, 518 U.S. 1021 (1996).  When reviewing a trial court=s
decision to grant or deny relief on a writ of habeas corpus, we should review
the facts in the light most favorable to the trial court=s
ruling and should uphold it absent an abuse of discretion.  Ex parte Peterson, 117 S.W.3d 804, 819
(Tex. Crim. App. 2003).  Reviewing courts
should afford almost total deference to a trial judge=s
determination of the historical facts supported by the record, especially when
the fact findings are based on an evaluation of credibility and demeanor.  Id. at 819 n.67. 








The determination of competency is not
solely a factual issue but rather is a mixed question of law and fact.  Drope v. Missouri, 420 U.S. 162, 174B75,
95 S. Ct. 896, 905B06
(1975).  When dealing with mixed
questions of law and fact, the reviewing court should give the same level of
deference if the resolution of those questions turns on an evaluation of
credibility and demeanor.  Peterson,
117 S.W.3d at 819; see also Torres v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005).  Unless reviewing
courts are unable to determine from the record what the trial court=s
implicit factual findings are, they should grant deference to implicit factual
findings that support the trial court=s
ruling.  Peterson, 117 S.W.3d at
819.  

But we review de novo the application of law
to fact and those questions of law and fact that do not depend upon credibility
and demeanor.  Id.  Application of the test for incompetency is a
legal question.  Drope, 420 U.S.
at 174B75, 95 S. Ct. at 905B06;
United States v. Makris, 535 F.2d 899, 908 (5th Cir. 1976) (stating even
if medical expert=s
opinion is credited, trial court must independently decide if defendant was
capable of reasonable consultation with counsel and comprehended proceedings), cert.
denied, 430 U.S. 954 (1977).  

                                             Discussion








In his first issue, Appellant argues that
the trial court abused its discretion when it denied his application for writ
of habeas corpus because the evidence showed that Appellant was incompetent
when he entered his plea.  We agree.

Comptency








A defendant=s
constitutional due process right to a fair trial prevents the State from
subjecting him to trial when his Amental
condition is such that he lacks the capacity to understand the nature and
object of the proceedings against him, to consult with counsel, and to assist
in preparing his defense.@  Drope, 420 U.S. at 171, 95 S. Ct. at
903; Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 838
(1966).  A person is incompetent to stand
trial if he does not have sufficient present ability to consult with his lawyer
with a reasonable degree of rational understanding or a rational, as well as
factual, understanding of the proceedings against him.  Tex.
Code Crim. Proc. Ann. art. 46B.003(a) (Vernon 2006).  A defendant is presumed competent to stand
trial and shall be found competent to stand trial unless proved incompetent by
a preponderance of the evidence.  Id.
art. 46B.003(b).[7]  Lack of competency can be raised for the
first time by post-trial writ of habeas corpus. 
Ex parte Yarborough, 607 S.W.2d 565, 566 (Tex. Crim. App. 1980).

Retrospective Determination of
Compentency  

A retrospective determination of competency
is allowed if there is sufficient evidence available to assure that a reliable
determination of competency can be made. 
Bolius v. Wainwright, 597 F.2d 986, 988 (5th Cir. 1979) (citing Makris,
535 F.2d at 904B05).  A>If
the court finds that a meaningful competency hearing cannot be conducted, then
of course, the writ must issue.=@  Bouchillon v. Collins, 907 F.2d 589,
594 n.14 (5th Cir. 1990) (quoting Martin v. Estelle, 583 F.2d 1373 ,1374
(5th Cir. 1978)).








The State suggests that there are Ainherent
problems@ with making a retrospective
determination of Appellant=s
competency at the time of his plea hearing, noting that fourteen months had
elapsed between his plea hearing and the hearing on his application for writ of
habeas corpus.  However, the difficulties
inherent in making a retrospective determination of a defendant=s
competency have been recognized and addressed by the United States Supreme
Court as well as the Texas Court of Criminal Appeals.  See Brandon v. State, 599
S.W.2d 567, 573 (Tex. Crim. App. 1979) (citing Dusky v. United States,
362 U.S. 402, 80 S. Ct. 788 (1960), Pate, 383 U.S. 375, 86 S. Ct. 836,
and Drope, 420 U.S. 162, 95 S. Ct. 896 as spelling out some of the
difficulties involved in making retrospective competency determinations,
including passage of time, present recollection of expert witnesses, and
ability of the judge and jury to observe the subject of their inquiry)), vacated
on other grounds, 953 U.S. 902 (1981). 


However, as the court of criminal appeals
observed in Brandon, A[t]here
is . . . ample authority that the requirements of due process may be fully met
as it concerns [an appellant] if he were now granted a trial to determine,
after the fact, whether he was competent at the time he was tried and
convicted,@ and concluded: A[r]etrospecive
determinations are possible depending upon the facts of each case and the
quality and quantity of evidence available.@
Id. at 573 (collecting cases). 
The length of time after trial in which it has been held feasible to
determine whether a defendant was competent when he was tried ranges up to
twenty-four years.  Id. at 573B74
(citing Lee v. Alabama, 406 F.2d 466, 471B72
(5th Cir.), cert. denied, 395 U.S. 927 (1969)).  Passage of time is only one factor to be
considered.  Id. at 574.

Evidence of Incompetency








The question of competency Ais
often a difficult one in which a wide range of manifestations and subtle
nuances are implicated.@  Drope, 420 U.S. at 180, 95 S. Ct. at
908.  Not all people who have a mental
problem are rendered by it legally incompetent. 
Bouchillon, 907 F.2d at 593. 
But A[o]ne need not be catatonic,
raving or frothing to be [legally incompetent].@  Lokos v. Capps, 625 F.2d 1258,
1267 (5th Cir. 1980).  Demeanor is not
dispositive.  Pate, 383 U.S. at
386, 86 S. Ct. at 842.  The existence of
even a severe psychiatric defect is not always apparent to a layperson.  Bruce v. Estelle, 536 F.2d 1051, 1059
(5th Cir.1976), cert. denied, 429 U.S. 1053 (1977).  NorCin
the case of a person who experiences intervals of competency and incompetencyCis
an episode of diminished capacity necessarily obvious to the layperson.  Bouchillon, 907 F.2d at 593.  But a layperson=s
observation of abnormal acts by an accused may be of great value as
evidence.  United States v. Gray,
421 F.2d 316, 318 (5th Cir. 1970).








Because it is difficult for a layperson to
detect and assess competency, expert opinion plays an especially important role
in competency determinations.  When an
expert witness, such as a psychologist, testifies at a competency hearing, the
court is not free to disregard the expert=s
testimony unless Athere
is sufficient evidence to justify doing so.@
Bouchillon, 907 F.2d at 594 n.15 (emphasis in original) (citing Maggio
v. Fulford, 462 U.S. 111, 117B18,
103 S. Ct. 2261, 2264 (1983)).  In Maggio,
the Supreme Court held that the trial court was justified in discounting
unimpeached testimony of a psychiatrist who opined that the defendant was
incompetent because the defendant had no history of mental illness, the trial
judge noted that he was Athoroughly
convinced@ that the defendant was
competent based on his own observations during and after trial, and the basis
of the psychologist=s
opinionCthat the defendant suffered from
paranoid delusions because he refused to identify two alibi witnesses for fear
they would be arrestedCwas
unfounded because the same two witnesses actually testified at trial.  Maggio, 462 U.S. at 113B15,
117B18, 103 S. Ct. 2262B63,
2264.  

By contrast, in Bouchillon, as in
this case, the only witness called by the State was defendant=s
trial counsel, who testified that defendant was Alucid@
and able to assist in his defense and therefore competent when he pleaded
guilty.  The appellate court held that
testimony and evidence concerning his demeanor at the plea hearing were
insufficient to override a psychologist=s
expert opinionCgiven after he conducted a
retrospective competency assessmentCthat
the defendant was incompetent.  Bouchillon,
907 F.2d at 594.








Where expert testimony clearly and
overwhelmingly points to a conclusion of incompetency, the fact-finder cannot
arbitrarily ignore the expert in favor of lay testimony.  Id. at 594 n.15; Strickland v.
Francis, 738 F.2d 1542, 1552 (11th Cir. 1984) (citing Brock v. United
States, 387 F.2d 254, 257 (5th Cir. 1967)).   In Brock, the fifth circuit listed
four factors that an appellate court should consider when assessing a
fact-finder=s decision to disregard an
expert=s opinion that a defendant was
incompetent:

(1) the correctness
or adequacy of the factual assumptions on which the expert opinion is based;

 

(2) possible
bias in the expert=s appraisal of the defendant's condition;

 

(3)
inconsistencies in the expert=s testimony, or material variations between
experts; and

 

(4) the
relevance and strength of the contrary lay testimony.

 

Brock, 387 F.2d at 258
(quoting Mims v. United States, 375 F.2d 135,  143B44
(5th Cir. 1967)).

        Additionally, when a defendant=s
trial attorney testifies at a retrospective competency hearing that the
defendant was competent when he pleaded guilty, the attorney=s
testimony must be discounted because of the potential for a conflict of
interest.  Bolius, 597 F.2d at
989.  In Bolius, the defendant=s
counsel at the time he pleaded guilty testified that the defendant was able to
relate facts to him coherently, had his senses under control, and was in
command of the situation.  Id. at
989 n.6.  The court of appeals expressed
doubt about the value of counsel=s
testimony:








[T]he testimony of trial counsel cannot be
treated as evidence coming from a totally disinterested witness.  Had counsel testified to anything other than
Bolius=s competency to plead guilty, he
would have placed himself in an awkward ethical position by revealing that he
had allowed his client to plead guilty at a time when he personally believed
Bolius to be incompetent.

Id. at 989; see also
Bouchillon, 907 F.2d at 594 & n.9 (reiterating observation in Bolius
that Athe testimony of trial counsel
cannot be treated as coming from a totally disinterested witness@).  

In this case, the trial court was presented
with testimony from three witnesses: Dr. Graham, the court-appointed
psychologist; Appellant=s
father; and Vanzura, Appellant=s
trial counsel.  Dr. Graham concluded from
her retrospective competency analysis that Appellant was incompetent when he
entered his guilty plea.  Appellant=s
father testified that Appellant has a long history of mental illness and that
communications from Appellant at the time of the plea hearing were
delusional.  Vanzura testified that
Appellant appeared to be taking his medications and was Alucid@
and able to consult with him and, therefore, competent.








Because the trial court implicitly
disregarded Dr. Graham=s
expert testimony in favor of Vanzura=s
lay testimony in failing to find Appellant incompetent at the time of his plea,
we must determine whether there is a sufficient basis in the record to justify
so doing.  See Bouchillon, 907
F.2d at 594 n.15.  None of the four Brock
factors weighs in favor of disregarding Dr. Graham=s
opinion.  See Brock, 387 F.2d at
258.  Her testimony is
uncontradicted and unimpeached.  Nothing
in the record suggests that her factual assumptions were incorrect or
inadequate; nor is there any suggestion of bias.  Her opinion is internally consistent, and
because she was the only expert witness, there is no material variation between
her opinion and other expert opinions.  

In contrast, the lay testimony that
Appellant was improving and mentally competentCthat
of attorney VanzuraCwas  purely conclusory.  His testimony was based on what Appellant
told himCthat Appellant was taking his
medication, and Appellant=s
Ayes@
answer that he understood what they were doing.   Vanzura=s
assumption that this information was correct was only speculation because it
was based upon no personal knowledge of any underlying facts that Appellant
was, indeed, medicated or improving. 
Opinion testimony based on speculation or conjecture has no probative
value.  See, e.g., Turro v. State,
950 S.W.2d 390, 403 (Tex. App.CFort
Worth 1997, pet. ref=d);  United Way of San Antonio, Inc. v. Helping
Hands Lifeline Found., Inc., 949 S.W.2d 707, 712 (Tex. App.CSan
Antonio 1997, writ denied) (op. on reh=g).









Specifically, opinion testimony of a lay
witness as to an individual=s
sanity or competency must be based on underlying personal observations or
experiences of the witness.  See Bigby
v. State, 892 S.W.2d 864, 888B89
(Tex. Crim. App. 1994) (holding lay opinion that defendant was insane based on
information from others not properly admitted), cert. denied, 515 U.S.
1162 (1995); Pacheco v. State, 757 S.W.2d 729, 734 (Tex. Crim. App.
1988) (holding that to be Acompetent@
evidence lay opinion must be based on personal knowledge or experience).  Rule 701 of the Texas Rules of Evidence
limits opinion testimony of a lay witness to that which is rationally based on
perception of the witness.  Tex. R. Evid. 701.  The requirement that the testimony be based
on the witness=s Aperception@
presumes the witness personally observed or experienced the underlying
facts.  Bigby, 892 S.W.2d at
889.  Other than what Appellant told him,
Vanzura merely assumed that Appellant was taking his medication because he
appeared to Vanzura to be improving and Alucid.@[8]  








But, as observed by the fifth circuit, where
a conditionCsuch as mental incompetencyCmay
not be visible to a layman, Acounsel
cannot depend on his or her own evaluation of someone=s
sanity once he has reason to believe an investigation is warranted []
because, where such a condition exists, the defendant=s
attorney is the sole hope that it will be brought to the attention of the
court.@ 
Bouchillon, 907 F.2d at 597 (emphasis in original).  And it Amust
be a very rare circumstance indeed where a decision not to investigate would be
>reasonable=
after counsel has notice of the client=s
history of mental problems.@  Id. 
Counsel cannot rely upon his own naked evaluation of his client=s
competency under those circumstances, and neither can we.  

In addition to Dr. Graham=s
testimony, the evidence was also undisputed by the State that AppellantCunlike
the defendant in MaggioChas
a long and well-documented history of mental illness.  See Maggio, 462 U.S. at 113B15,
117B18, 103 S. Ct. 2262B63,
2264.  FurtherCand
again unlike MaggioCthe
judge who conducted the retrospective competency hearing did not conduct the
plea hearing and thus did not personally observe Appellant=s
demeanor and behavior at the plea hearing. 
See id.  Finally, Appellant=s
father=s testimony that Appellant=s
communications from around the time of the plea hearing were delusionalCa
Alay witness=s
observation of abnormal acts by [the] accused@Cis
evidence of considerable value, unlike the testimony of Appellant=s
trial counsel.  See Gray, 421 F.2d
at 318.








Under these circumstances, we hold that the
trial court abused its discretion by disregarding Dr. Graham=s
expert testimony and implicitly finding that Appellant was competent at the
time of his plea hearing.  We further
hold that Dr. Graham=s
testimony established by a preponderance of the evidence that Appellant was
incompetent at the time of his plea hearing. 
We sustain Appellant=s
first issue.

                                             Conclusion

Having sustained Appellant=s
first issue, we reverse the trial court=s
order denying Appellant=s
petition for writ of habeas corpus, vacate the trial court=s
order placing Appellant on deferred adjudication community supervision, and
order that Appellant be released when he is adjudicated to be competent,
subject to the State=s
right to a new plea hearing and trial of Appellant within a reasonable
time.  Because of our resolution of
Appellant=s first issue, we will not
consider his second issue, in which he complains that trial counsel rendered
ineffective assistance.  See Tex. R. App. P. 47.1.

 

 

                                                        ANNE
GARDNER

JUSTICE

 

PANEL A:   CAYCE,
C.J.; HOLMAN and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 15, 2008

 











[1]The trial court
included in the conditions of community supervision that Appellant be placed on
the MHMR caseload and undergo a psychiatric examination. 





[2]On March 29, 2006, a
psychiatrist at Big Spring Hospital, where Appellant had been transferred,
reported to the trial court that Appellant had regained competency.  No additional materials in the file reveal
whether the trial court has adjudicated Appellant competent to stand
trial.  We will presume that Appellant
continues to be incompetent, absent such an adjudication.  See Johnson v. State, No. 02-05-00205-CR,
2006 WL 2578033, at *4 (Tex. App.CFort Worth June 22, 2006) (order not designated for
publication) (noting presumption of continuing incompetency that attaches after
an accused has been determined to be incompetent until the trial court actually
adjudicates the accused to be competent).  
   

 





[3]The judge who
made the determinations that Appellant was incompetent to proceed to
adjudication and who conducted the hearing on the application for writ of
habeas corpus was not the judge who received Appellant=s guilty plea;
the plea was received by a visiting judge. 
Why the hearing on Appellant=s application for writ of habeas corpus was not
held for ten months is not revealed in the record.





[4]Appellant=s father confirmed that
Appellant was never employed by the CIA nor any similar organization.  

 





[5]Vanzura referred
to the AStrickland standards@ twice when
describing Appellant as being competent. 
However, he acknowledged on cross-examination that he was referring to Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  As Appellant=s current counsel
pointed out to Vanzura at the hearing, that case established the standards for
ineffectiveness of counsel, not competency of an accused to stand trial.  





[6]The record does
not show that the trial court made the findings of fact and conclusions of law
required by article 11.072, section 7(a). 
See Tex. Code Crim. Proc.
Ann. art. 11.072, ' 7(a) (A[T]he court
shall enter a written order including findings of fact and conclusions of law.@).





[7]If a prior,
unvacated determination of incompetency is shown, the presumption is that the
incompetency continues, and the burden shifts to the State to prove the accused=s competency to
stand trial beyond a reasonable doubt.  Manning
v. State, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987).  Appellant was determined by the trial court
to be incompetent for the motion to proceed to adjudication for a time that
post-dated his plea of guilty.  Thus the
presumption of continuing incompetency does not aid Appellant in this
proceeding.  





[8]A lay witness=s observation
that an accused seems Anormal@ is of no value
unless the witness has had Aintimate and prolonged contact with the accused.@  Gray, 421 F.2d at 318 (quoting Carter
v. United States, 252 F.2d 608, 618 (D.C. Cir. 1957)); see also Makris,
535 F.2d at 908. Vanzura had some unspecified contact with Appellant in the
past, a face-to-face meeting with him in jail, and two meetings in the basement
of the courthouse.  This does not equate
to intimate and prolonged contact.