[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2011
JOHN LEY
CLERK

No. 10-12287
Non-Argument Calendar
_____

D.C. Docket No. 8:04-cr-00085-SCB-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA BLAINE DUNCAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 18, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Joshua Blaine Duncan appeals the district court's revocation of his supervised release and imposition of a 24-month sentence, pursuant to 18 U.S.C. § 3583(e)(3). After review, we affirm.

## I.  BACKGROUND FACTS

### A.  Conviction and Sentence

After pleading guilty in 2004, Duncan was convicted of conspiracy to dispose of a firearm to a person who was an unlawful user of, or addicted to, any controlled substance, in violation of 18 U.S.C. § 371.

Duncan's undisputed presentence investigation report ("PSI") noted, among other things, that: (1) Duncan had an extensive history of substance abuse and crimes involving, inter alia, possession of cocaine and marijuana, aggravated battery and numerous burglaries and thefts; (2) Duncan believed his criminal history stemmed from his drug abuse; (3) in 2002 Duncan's stepfather committed suicide and Duncan was at his stepfather's side until he died; (4) since the suicide, Duncan had mental health problems and was abusing prescription and illegal drugs; and (5) while in federal custody, Duncan was diagnosed with post-traumatic stress disorder ("PTSD") and panic disorder and was taking anti-anxiety medication.

The district court imposed a 60-month sentence, followed by three years' supervised release. The district court required Duncan to participate in a drug treatment program as a special condition of supervised release.

**B.    Petition to Modify Supervised Release**

On October 24, 2007, Duncan began his supervised release term. On December 10, 2008, the Probation Office filed a petition to modify the conditions of Duncan's supervised release. According to the petition, in late October and early November 2008, Duncan reported to a substance abuse counselor that he was hearing voices. The Probation Office recommended that the district court modify Duncan's conditions of supervised release to include mental health counseling. The district court granted the petition.

**C.    First Petition to Revoke Supervised Release**

On March 3, 2009, the Probation Office filed a petition alleging that Duncan had violated multiple conditions of supervised release, including: (1) failure to submit written monthly reports between May 2008 and January 2009 (Violation 1); (2) positive urinalysis for benzodiazephine on March 1, 2008 (Violation 2); (3) failure to participate in drug aftercare treatment (Violations 4

and 5);[1] and (3) failure to participate in mental health counseling on February 23, 2008, December 24, 2008, January 7, 2009 and January 14, 2009 (Violations 6 and 7).

In addition, the petition alleged that Duncan failed to permit his Probation Officer, Joseph Wigley, to visit him at home or elsewhere from March 18, 2008 to June 22, 2008 because Duncan claimed to be suffering from Methicillin-resistant Staphylococcus Aureus ("MRSA") (Violation 3). The petition further alleged that, despite multiple requests, Duncan "failed to visit a physician during this period to confirm whether or not he had MRSA, so that" Officer Wigley could visit him. The Probation Office recommended that Duncan's term of supervised release be revoked. On March 3, 2009, the district court issued a warrant for Duncan's arrest, but attempts to arrest Duncan were unsuccessful. The Probation Office had no contact with Duncan for over a year until he was arrested on March 30, 2010.

**D.     Second Petition to Revoke Supervised Release**

On April 6, 2010, the Probation Office filed a second petition to revoke Duncan's supervised release term. The petition re-alleged the violations in the first petition and added two new allegations (Violations 8 and 9). Specifically,

---

[1]More specifically, Duncan was discharged from drug treatment on August 5, 2008 and January 14, 2009, due to numerous missed appointments

this superseding petition alleged that, on February 26, 2010, Duncan committed new criminal conduct, including state charges of aggravated assault and battery-domestic violence. According to the petition, Duncan pushed his victim's head against a wall, held a gun to her head and threatened to kill her.

## E.  Revocation Hearing

Because Duncan's main contention on appeal relates to his apparent competence, we review what happened at the revocation in detail. At his May 4, 2010 revocation hearing, Duncan was represented by counsel. When asked whether he had taken any drugs or medicines within the past 24 hours, Duncan responded that he had taken only cold medicine and that he had not taken anything that would affect the clarity of his mind.

Duncan admitted Violations 1, 2, 4, 5, 6 and 7, but denied Violations 3, 8 and 9. As to Violation 3, failing to permit Officer Wigley to visit, Duncan argued that Officer Wigley advised Duncan that he (Officer Wigley) would not visit Duncan's residence and Duncan was not to visit the Probation Office until Duncan had been cleared by a doctor. Duncan claimed to have evidence of doctor visits, hospitalization and photographs of the infection, but never introduced this evidence. Duncan did not testify at the hearing.

As to the new criminal conduct in Violations 8 and 9, Duncan advised the district court that the state charges were dismissed and submitted "letters of release" as to the state charges. On March 28, 2010, the victim, Duncan's live-in girlfriend Lisa Harris, was found dead in the Hillsborough County River. Duncan maintained that he was not a suspect in his girlfriend's homicide and was cooperating with investigators.

Duncan's current Probation Officer, Dina Roman Lopez, testified that Duncan's case was transferred to her in November 2008 because she is the mental health specialist. Officer Lopez confirmed that Duncan was diagnosed with PTSD, depression and anxiety.

Officer Lopez was not supervising Duncan at the time of alleged Violation 3. Officer Lopez said that Duncan's file documented that numerous times Officer Wigley instructed Duncan to verify his condition, but contained nothing from Duncan until a letter faxed on June 13, 2008 from a doctor stating that Duncan had previously suffered from MRSA, but was not currently contagious. According to Officer Lopez, Officer Wigley felt he could not safely go to the residence "until something was confirmed."

As to Violations 8 and 9, Officer Lopez spoke with the state attorney, who advised her that the charges against Duncan were dismissed after the victim, Lisa

6

Harris, failed to appear for a deposition. Approximately ten days later, Harris was found dead in the river. A homicide investigation was pending while they awaited a toxicology report from the Coroner's Office.

Officer Lopez obtained a copy of the taped 911 call, which was played at the revocation hearing. Officer Lopez testified that the 911 tape was consistent with the police report, which indicated that Duncan and his girlfriend were involved in a strangulation incident on December 27, 2009. Officer Lopez investigated that earlier incident and determined that the resulting charges of aggravated and simple battery were dropped after Lisa Harris signed a waiver of prosecution. According to the police report for the December 27, 2009 incident, Duncan threw Harris to the ground, grabbed her throat and attempted to strangle her before fleeing.

According to Officer Lopez, when Duncan failed to comply with treatment by missing appointments, Officer Wigley "instituted sanctions and attempted to work with [Duncan] . . . instead of asking the Court for adverse action." In March 2009, after Duncan was transferred to Officer Lopez's supervision, Officer Lopez informed Duncan she was "going to proceed with requesting adverse action from the Court." Officer Lopez had no further contact with Duncan. On two occasions, Officer Lopez attempted to visit Duncan's residence, but a pit bull was loose on

the property. Officer Lopez tried to call Duncan on her cell phone, "got negative results" and did not get out of her car.

The government requested a 24-month sentence. Duncan's counsel argued that Duncan suffered from substance abuse and mental health problems, was in "bad shape" and "need[ed] help." Duncan's counsel did not request a specific sentence, but requested that no supervised release accompany any additional incarceration.

By a preponderance of the evidence, the district court found that Duncan had committed Violation 3. The district court stated that Violation 3 "may be incorrectly worded," but found that from March 18 to June 22, Officer Wigley was unable to check on Duncan because Duncan did not promptly provide proof that he had MRSA. The district court concluded that Duncan's conduct was a violation of condition ten of his supervised release, which required Duncan to permit his probation officer to visit him at any time, at home or elsewhere. The district court concluded that the government had not proved the aggravated assault and battery alleged in Violations 8 and 9.

The district court confirmed that Duncan's advisory guidelines range was 8 to 14 months' imprisonment, with a statutory maximum of 24 months' imprisonment. The district court stated that Duncan was a "problem" and a

"danger to society" based on: (1) his extensive criminal history, (2) his mental health problems, (3) the fact that there were two 911 calls involving him, (3) the Probation Office had difficulty visiting him, and (4) he did not turn himself in on a warrant that was outstanding for over a year. The district court stressed its concern for protecting the community and Duncan's "inability to do supervised release." The district court imposed a 24-month sentence with no term of supervised release. Duncan filed this appeal.

## II. DISCUSSION

**A. Failure to Hold Competency Hearing <u>Sua Sponte</u>**

Duncan argues that the district court should have inquired <u>sua sponte</u> into Duncan's competency to participate in the revocation hearing and to admit any of the alleged violations of supervised release.[2]

"[A]t any time after the commencement of probation or supervised release and prior to the completion of the sentence," the district court must <u>sua sponte</u> conduct a hearing to determine the defendant's mental competence "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he

---

[2]We review for abuse of discretion a district court's failure to conduct a competency hearing <u>sua sponte</u>. <u>United States v. Williams</u>, 468 F.2d 819, 820 (5th Cir. 1972).

is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The district court must sua sponte conduct a competency hearing when the information known to the district court is "sufficient to raise a bona fide doubt regarding the defendant's competence." Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990). In determining whether the district court should have sua sponte held a competency hearing, we consider: (1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor during the proceedings; and (3) prior medical opinion as to the defendant's competence to stand trial. Id.

Here, there is no evidence of irrational behavior around the time of the May 2010 revocation hearing. There was evidence that Duncan reported hearing voices in the fall 2008. As a result, the district court modified Duncan's supervised release terms to include mental health counseling. However, there is no evidence that Duncan was hearing voices almost two years later, at the time of his revocation hearing.

Importantly, the transcript of the revocation hearing suggests Duncan's demeanor during the hearing was unexceptional. Duncan responded rationally and appropriately to questions and did not give the district court any reason to believe that Duncan was, at the time of the hearing, unable to understand the nature and

10

consequences of the revocation proceeding or to assist his counsel in his defense. There was no prior medical opinion regarding Duncan's mental competency to stand trial or to plead guilty.

There was testimony that Duncan had been diagnosed with PTSD, depression and anxiety, and defense counsel noted Duncan's substance abuse and mental health issues, describing Duncan as "in bad shape." However, "the mere presence of mental illness or other mental disability at the time" does not mean the defendant is mentally incompetent. See Bolius v. Wainwright, 597 F.2d 986, 990 (5th Cir. 1979).[3] And, although defense counsel was aware of Duncan's mental health problems, he did not raise the issue of Duncan's competency. See United States v. Rodriguez, 799 F.2d 649, 655 (11th Cir. 1986) (explaining that defense counsel's failure to raise the issue of the defendant's competency is persuasive evidence that the defendant was competent). Given the record as a whole, we conclude that the information the district court had at the revocation hearing did not raise a "bona fide doubt" as to Duncan's mental competence.

## B. Sufficiency of the Evidence as to Violation 3

---

[3]Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit).

Duncan argues that the district court's finding that Duncan did not permit Officer Wigley to visit him between March and June 2008 was not supported by the record.[4]

Under 18 U.S.C. § 3583(e), a district court may revoke a defendant's term of supervised release and, after considering the 18 U.S.C. § 3553(a) factors, may impose a prison sentence when it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3); see also United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006).

Here, Officer Lopez's testimony supports the district court's finding. Officer Lopez testified that Duncan's case file indicated that Officer Wigley asked Duncan numerous times to provide medical confirmation of his highly contagious MRSA infection and that Duncan knew Officer Wigley did not feel safe visiting him until then. Furthermore, the file contained no such medical confirmation until the June 13, 2008 faxed letter stating that Duncan was no longer contagious. In other words, Duncan's failure to comply with Officer Wigley's repeated requests

---

[4]We review a district court's revocation of a supervised release term for an abuse of discretion. United States v. Frazier, 26 F.3d 110, 112 (11th Cir. 1994). A district court's findings of fact made at a revocation hearing are binding unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993).

over a three-month period effectively and understandably prevented any visits during that time.

Duncan's complaint that the government did not present Officer Wigley's testimony is unavailing. First, Duncan did not raise this objection in the district court. Second, the Federal Rules of Evidence are not applicable in revocation proceedings, and the district court may, after balancing the defendant's confrontation right against the government's reasons for denying confrontation, admit hearsay evidence it finds reliable. See United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994). Furthermore, on appeal Duncan does not challenge the reliability of Officer Lopez's hearsay testimony or argue that it was inadmissible under Frazier's balancing test.[5]

## C.    Reasonableness of 24-month Sentence

---

[5]Within its discussion of the sufficiency of the evidence supporting Violation 3, Duncan's appellate brief states in one sentence that the district court "unfairly permitted the Government to amend the allegations in such a manner so as to ensure that it secured a violation" and that "the Government's attempt to amend the violation at the close of testimony" denied him notice to defend the allegation. To the extent Duncan attempts to make a due process argument, he did not raise it in the district court. Furthermore, Duncan's appellate brief offers no legal analysis or supporting citation to authority. Under the circumstances, Duncan did not sufficiently preserve this issue for appellate review. See United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (explaining that an issue was abandoned where the defendant's brief made only "passing references" to the issue "as background to the claims he does expressly advance or [are] buried within those claims"); see also Fed. R. App. P. 28(a)(9)(A) (requiring argument portion of the brief to contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

Duncan contends his 24-month sentence is procedurally and substantively unreasonable.

Before imposing a prison term upon revocation, the district court must consider the factors in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3583(e).[6] The district court also must consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which provides recommended, non-binding ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006).

We review a sentence imposed upon revocation of supervised release for reasonableness. Sweeting, 437 F.3d at 1106-07. Our reasonableness review applies the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007). We first look at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances and the § 3553(a) factors. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).

_____

[6]The relevant § 3553(a) factors that the court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3583(e) (cross referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

The party challenging the sentence has the burden to show it is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

As to his procedural reasonableness claim, Duncan argues that the district court relied on clearly erroneous facts.[7] We disagree. Duncan's extensive criminal history was supported by the criminal history section of his PSI, to which Duncan has never raised any objection. See United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (concluding that facts in the PSI to which the defendant does not object are deemed admitted for purposes of sentencing). Duncan admitted failing to participate in mental health and substance abuse counseling. The district court heard the 911 call made by Lisa Harris in which she stated that Duncan had held a gun to her head and threatened to kill her and mentioned an earlier incident in which Duncan had tried to strangle her.[8] Duncan did not object to the admission of this evidence, and the district court was able to make its own determination of the weight to accord it. Officer Lopez's testimony supported the finding that Duncan prevented Officer Wigley from visiting him by failing to

---

[7]Duncan does not dispute that his recommended imprisonment range was properly calculated as 8 to 14 months, that the district court treated this range as advisory and that the district court considered the § 3553(a) factors. Because Duncan's original firearm offense was a Class D felony, Duncan's maximum statutory term of imprisonment upon revocation was two years. See 18 U.S.C. § 3583(e)(3).

[8]The district court also appears to have reviewed copies of the police reports for the two incidents, although these reports and the taped 911 call are not in the record on appeal.

15

promptly provide confirmation of his medical condition, that Officer Lopez's own attempts to visit Duncan were thwarted by the presence of a pit bull, and that Duncan did not contact the Probation Office for over a year during his supervised release.

Duncan's claim that the district court failed to adequately explain the sentence it imposed is also belied by the record. The district court cited the § 3553(a) factors and specifically discussed several factors, including Duncan's history and characteristics and the need to protect the public.

Likewise, Duncan has not shown that his 24-month sentence is substantively unreasonable. Duncan's criminal history spans almost fifteen years and began when he was only fifteen years old. Duncan has a long history of substance abuse problems. Duncan also has struggled with mental health problems, including PTSD and panic disorder. Against this backdrop, while on supervised release, Duncan repeatedly failed to appear for mental health or substance abuse counseling, tested positive for illegal drug use, stopped filing the required monthly reports with his Probation Officer, did not make it easy for his Probation Officers to visit him and eventually disappeared for over a year. During that year, Duncan's live-in girlfriend made two 911 calls claiming that Duncan had battered her.

16

Given the totality of the circumstances, we cannot say the 24-month sentence was substantively unreasonable.

**AFFIRMED.**