**Clinton C. TALIAFERRO, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. C–70–639.**

United States District Court,
N. D. California.

Aug. 20, 1971.

Herman Mintz, Oakland, Cal., for petitioner.

James L. Browning, U. S. Atty., Paul Fitzpatrick, Asst. U. S. Atty., San Francisco, Cal., for respondent.

### ORDER DENYING RELIEF AND DISMISSING ACTION

OLIVER J. CARTER, Chief Judge.

Petitioner brings this action pursuant to 28 U.S.C. § 2255 to vacate a sentence imposed upon him on September 12, 1969. On May 5th of that year he pled guilty to one count of a two count indictment. The indictment charged uttering counterfeit currency (18 U.S.C. §

472) in one count and possession of such currency (18 U.S.C. § 472) in another. The petitioner pled guilty to the second count, the first count was dismissed on request of the government on June 2, 1969 after the plea when petitioner was given a 90-day continuance of judgment and sentence.

Petitioner presents several intertwined arguments in support of the contention that his plea of guilty was involuntary. He contends that he was under the influence of heroin and LSD at the time of the entry of his plea. He also contends that his addiction impelled him to take any course that promised even a brief opportunity to remain out of custody and attempt a self-cure of the drug habit. The third contention is that his counsel's suggestion that a 90-day stay of judgment would be granted for a probation study became the straw at which he grasped. Petitioner also contends that he was misled by his counsel's speculations concerning the length of sentence. Finally, his claim for relief is pinned to the contention that the trial judge failed to adequately question petitioner pursuant to Rule 11 F.R.Cr.P., and thus the corrupting influences continued to hold sway.

Rule 11 F.R.Cr.P. requires the District Court to address the defendant personally and determine that the "plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea."

The United States Supreme Court interpreted that rule broadly in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.

"The rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. * * * A defendant who enters such a [guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self incrimination, his right to trial by jury, and his right to confront his accusers. * * * Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." (pp. 465, 466, 89 S.Ct. 1170)

The Court questioned the petitioner prior to entry of plea as follows:

"MR. OSTERHOUDT: William Osterhoudt for the defendant.

"THE CLERK: Is the defendant present?

"MR. OSTERHOUDT: Yes, he is.

"Your Honor, the defendant has indicated an intention to withdraw his previously entered plea of not guilty and enter a plea of guilty to count two of the indictment.

"THE COURT: Mr. Taliaferro, you previously pleaded not guilty to an indictment charging you with possession and passing of counterfeit bills. Your attorney now states that you wish to enter a plea of guilty to this charge, is that correct?

"THE DEFENDANT: That is correct, yes.

"THE COURT: Both counts?

"MR. OSTERHOUDT: Count two, Your Honor.

"THE COURT: Count two charges: That in January 1969 in Alameda County you did with intent to defraud, possess and conceal counterfeit obligations of the United States; apparently a Federal Reserve Note as described in the indictment.

Did you do the acts charged against you in this indictment?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you feel yourself guilty of this charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you had the advice of your attorney in connection with this plea of guilty?

"THE DEFENDANT: Yes, sir.

**410**

"THE COURT: Do you understand that this subjects you to a fine of not more than $5,000 and/or imprisonment of up to 15 years on each count?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Has anyone made any promises to you regarding what this court might or might not do by way of penalty in this matter?

"THE DEFENDANT: No, Your Honor.

"THE COURT: We will accept the plea.

"THE CLERK: Clinton Charles Taliaferro, is it your desire to withdraw your former plea in this action?

"THE DEFENDANT: That is correct.

"THE CLERK: What is your plea to count two of the indictment, guilty or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: Fix a date for judgment." (tr. May 5, 1969, pp. 1 and 2)

■ The Court concludes that the petitioner was adequately questioned in compliance with Rule 11. None of the cases cited by petitioner revealed as adequate a record of questioning as shown here.

Because petitioner's other contentions involved matters not of record the Court had petitioner transferred to San Francisco. He was given access to legal materials in various institutions in the area and eventually accepted as appointed counsel Mr. Herman Mintz. Several preliminary hearings and arguments were had. On November 13, 1970 an evidentiary hearing was held at which petitioner, represented by his appointed counsel, testified. The Court also heard testimony from the appointed counsel who represented Mr. Taliaferro in the criminal proceedings.

Petitioner, both in his testimony and original moving papers, has oversimplified the number and nature of his pretrial maneuverings. He was arrested on January 18, 1969 and seen on that same day by Mr. Osterhoudt and Mr. Kipperman of the Legal Aid Society of San Francisco. (tr. Nov. 13, p. 48) In early February Mr. Osterhoudt discussed a possible plea with the petitioner who indicated that he wanted to delay his trial as much as possible. (tr. Nov. 13, pp. 10, 31, 33, 49) At that time the petitioner indicated to his counsel that he intended to plead guilty. He was advised that a plea of not guilty entered at that time would give the petitioner more time. (tr. Nov. 13, p. 49) He was also told that the Legal Aid Society would actively defend his case if he chose to stand trial, but that success was unlikely. (tr. Nov. 13, p. 33)

A plea of not guilty was entered on March 24, 1969, and the case was set for a jury trial to begin on May 5, 1969. On the day set for trial the petitioner had another interview with Mr. Osterhoudt at which time they discussed changing the plea to guilty. His counsel informed the petitioner that such a tactic would result in another delay of approximately 30 days during which a probation or pre-sentence report would be prepared by the probation office. (tr. Nov. 13, p. 46) The plea of guilty was entered and June 2nd was set as the date of judgment and sentence. During that period petitioner actively sought recommendations from friends and relatives to convince the Court that probation was an appropriate sentence.

On June 2, 1969 petitioner appeared in court again represented by Mr. Osterhoudt. Shortly before the proceedings Mr. Osterhoudt advised him that the probation office was recommending a 90-day continuance during which the petitioner would be expected to prepare a "planned community" to show his suitability for continued probation. (tr. Nov. 13, p. 47) At that time the Court also dismissed count 1 of the indictment.

Subsequently petitioner left the jurisdiction without contacting the probation office leaving bad checks to cover local debts. He was arrested by local authorities in Sand Point, Idaho, for possession of narcotics. After one continuance petitioner again appeared in Court represented by Mr. Hewitt, Mr. Osterhoudt's superior in the Legal Aid Society. Another vigorous presentation was made by the petitioner and his attorney for an additional attempt at probation. The Court heard the argument at length and finally concluded that incarceration was necessary. Petitioner was sentenced to five years in prison. On November 7, 1969 petitioner wrote to the Court requesting a modification of sentence which was denied on November 25, 1969. On January 19, 1970 petitioner filed the instant action.

Petitioner has woven a very tangled web indeed in his version of the conversations with his appointed counsel. He points to one interview he had with another representative of the Legal Aid Society, Mr. Kipperman. Petitioner claims that Mr. Kipperman advised him a week or so after his arrest that the sentence would quite possibly be "minimal" (12–18 months) if he cooperated with the Secret Service. Petitioner does not contend that any promises were made or even that his counsel was making a firm prediction, but merely that the period of 12–18 months stuck in his head as a good figure. (tr. Nov. 13, p. 4) He now tries, of course, to conjure up a subjective mental state bordering on compulsion surrounding this approximate figure. He obviously feels betrayed because the eventual sentence was considerably in excess of that estimate.

■ Of course the fact is that Mr. Kipperman was being quite conservative since the initial plan of the Court was clearly to grant probation if the petitioner could demonstrate the ability to function successfully under supervision. From the testimony it is quite clear that the petitioner was involved in taking calculated risks throughout his pleading process. Such calculations do not make a plea entered thereupon involuntary. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Petitioner claims that he was buying time and this led him to plead guilty. But it apparently also led him to plead not guilty. Petitioner contends that he pled guilty because he thought the sentence, if any, would be "minimal". But he also pled not guilty on March 24 when he already had the exact same advice. In short the Court must conclude that the petitioner throughout has played fast and loose with the Court in every particular and continues to do so to date.

Petitioner made an eloquent plea for the 90-day probationary study, and then promptly fled the jurisdiction writing bum checks in the process. Petitioner began or continued to use narcotics in Idaho until he was arrested there on local charges. Until then the Court was completely unaware that any such problem existed. Petitioner made another eloquent plea for probation upon his return for judgment. No mention was made at that date of involuntariness or of withdrawing the plea. He says that he stood mute because he thought he still had a chance for probation. Not even when the request for modification of sentence was made was the question of involuntariness raised. Only now that the quiver is empty does he assert the claim that the plea was involuntary.

■ The Court does not believe that the tactical and strategic motives behind petitioner's pleas rendered them involuntary. Gibilterra v. U. S., 428 F.2d 393 (9th Cir. 1970) held that:

"The fact that hope for speedy treatment was a motivating force behind appellant's decision to plead guilty does not render that plea involuntary." (p. 394)

Brady v. U. S., 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) held that guilty pleas entered to obtain a lesser sentence are not thereby involuntary.

■ Finally, the Court concludes that the petitioner was not under the influence of drugs on May 2, 1969 to the extent that they affected the validity of his plea. His testimony alone supports that contention. Petitioner contended in his moving papers that witnesses could establish his drugged condition on that date. The prime witness was to be his wife. Yet she did not appear at the hearing. Furthermore his counsel Mr. Osterhoudt has testified that petitioner seemed to understand what was said to him on each occasion that they conferred. (Tr. Nov. 13, p. 51).

■ The Court concludes that petitioner made a "voluntary and intelligent choice among the alternative courses of action open to [him]." North Carolina v. Alford, *supra,* 400 U.S. at 31, 91 S.Ct. at 164. He was competently advised by counsel who told him the alternatives available. He was told that the Legal Aid Society would exert every effort in his defense if he desired a trial. He was also told that the chances of success were not good. That assessment was realistic since petitioner now has testified that he had counterfeit bills in his possession when arrested. (tr. Nov. 13, p. 21) The Court specifically told him that the maximum sentence could be 15 years. (tr. May 5, p. 2) Finally an examination of the entire course of petitioner's conduct reveals rationality from every objective criteria. Petitioner has attempted throughout to avoid the consequences of his own actions. He attempted that before his sentence and continues in that attempt today. The Court finds that the plea of guilty entered by the petitioner on May 5, 1969 was made voluntarily and with understanding of the nature of the charge and the consequences of the plea. The Court accordingly concludes that petitioner has failed to prove adequate grounds for the vacation of his sentence.

It is ordered that the petition be denied, and that the action be, and the same is hereby dismissed.