This is an appeal from the denial of a petition for writ of error coram nobis. In December of 1979, Joseph Eathorne caused the death of Delores Terry when his automobile collided with hers. He pled guilty to an indictment charging second degree murder and was sentenced to thirty years' imprisonment. He did not appeal this conviction. Six months after he had been sentenced, Eathorne filed a pro se petition for writ of error coram nobis alleging that the combined effect of mental illness and medication prevented him from making an informed, intelligent, and voluntary guilty plea. That is the only issue raised on appeal.
It is undisputed that Eathorne was taking five legally prescribed medications at the time he pled guilty. Four of the drugs (Diazide, Inderal, Isordil, Zyloprim) were for treatment of a heart condition, high blood pressure or hypertension. The fifth drug (Mellaril) was a tranquilizer useful in treating major mental illnesses such as schizophrenia and also for treating anxiety and even mild depression in smaller doses. *Page 447 
Only one expert's testimony was offered in evidence at the hearing on the coram nobis petition on the effect of these medications. Psychiatrist James E. Morris, Jr. stated that the combination of all these drugs "could produce such side effects as weakness, as a sense of slowing, of low energy level, even possibly somewhat diminished level of alertness." Dr. Morris had not examined Eathorne and stated that "(i)t would be difficult to say how significantly (the drugs) would interfere" with his mental abilities. He could not give a "precise" opinion as to the actual effect of the medications on Eathorne at the time of the guilty plea.
Eathorne testified at this same hearing and stated that he felt "extremely guilty over the death of the young woman, but did not feel that it was a crime." He pled guilty because of "the combination of a severe depression and the effect of drugs, I had just thrown myself to the system, I just didn't have any fight or any will to contest (the) thing." He described the effects of the medication: "It slowed — slowed all of my body and my mental capacity down, it made me more or less lethargic and not I didn't have any will to no agression to — at all no — nothing that made me want to stand up and fight, fight back."
Although maintaining that the medication interfered with his mental capacity and that he had "thrown himself to the system", Eathorne admitted that he refused, against the advice of his own attorney, to accept the twenty-year plea bargain offered by the District Attorney. Eathorne stated that he refused the settlement because he "wanted to rely on the wisdom of the court to see the whole picture and to realize that this was not in effect a murder but an accident." He testified that he could not effectively assist his counsel and if he "were to make the decision today (he) would have gone to trial."
Eathorne admitted that, before accepting his guilty plea, the judge asked him if he were using drugs. He testified that he denied using any "drugs", even though he was on prescription "medication", because he thought the judge was asking about "illegal drugs". On cross examination, Eathorne testified that he told the judge he was not under the influence of any drugs because he "did not use any illegal drugs at that time."
Eathorne's appointed trial attorney, Walter Braswell, also testified at the coram nobis hearing. He advised Eathorne to plead guilty and accept the district attorney's offer of a twenty-year sentence and advised him against entering a plea without any agreement. He knew that Eathorne was taking Inderal and Isordil and stated that he "seem(ed) to me at the time that he was able to comprehend (and) appropriately respond" to their "discussions regarding the applicable law": "I think he understood, . . . but he just did not feel that the circumstances of this case were such that it would be morally right for him to be charged with murder."
Braswell testified that Eathorne "broached" the possibility that the offered twenty-year sentence could be made to run concurrent with a life sentence he was serving for a 1970 murder conviction. Braswell felt that Eathorne wanted "an open ended plea" because he felt that "the Court would be less of that (prosecutorial) mind in looking at the case and I think he felt that the Court would not regard it as a case where a Murder sentence was appropriate and confidently with that would also impose a sentence less than twenty years."
Braswell stated that Eathorne "appeared to be in touch with reality he knew who he was, where he was, who I was, why I was conversing with him and the subject matter. * * * He was able to recount some of his activities on the day in question, prior to the accident. But he himself received some head injuries in the accident and his recollection of those immediately events was poor as a result. * * * He tried to cooperate (with me) the best he could." When asked if counsel thought Eathorne appeared to understand what he was doing in pleading guilty, counsel responded, "He made a decision, the question would be whether or not he used good *Page 448 
judgment or had good judgment at the time he made the decision, I advised him against making that decision. What motivated him to make that decision I really couldn't say."
This record includes a transcript of the guilty plea and the sentencing hearing. At the sentencing hearing, the defense called Dr. Edwin Segar, a Forensic Psychologist at Bryce Hospital, who testified to Eathorne's long history of alcohol abuse.
Before Eathorne was arraigned, he was sent to Bryce Hospital for an evaluation of his mental competency. There, he was found competent to stand trial and responsible for his actions at the time of the crime. The evaluation at Bryce's also revealed a "long history of alcohol abuse."
In February of 1980, the Forensic Evaluation Board at Bryce found Eathorne to be "functioning within the average range of psychological abilities. Test results were not suggestive of organic impairment. Test results did suggest that Mr. Eathorne is suffering from a grief reaction, along with his having a history of alcohol abuse. Also, Mr. Eathorne has strong religious interest."
In May of 1980, the Board found that although the "reality testing was marginal . . . his judgment and insight were fair" and "the psychological assessment revealed that Mr. Eathorne is functioning at the above average range of intellectual abilities." He was "diagnosed (1) Personality Disorder — Addiction and (2) Depressive Neurosis." The medical records reveal that Eathorne was considered "suicidal" at times and was suffering from guilt and a "worthless state of mind."
In April of 1980, the Forensic Unit found him "presently competent to stand trial and to assist his attorney in preparing his defense; that he did understand the nature of the charge against him; that he was not suffering from a mental illness at the time of the offense which prevented him from distinguishing right from wrong or from adhering to the right." At the time of his release in May of 1980 from the hospital, Eathorne "was not felt to be suicidal." Eathorne pled guilty in October of 1980.
Due process requires that an accused be legally competent to plead guilty. Chavez v. United States, 641 F.2d 1253, 1255-56
(9th Cir. 1981). The plea must be voluntary and intelligent.Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711,23 L.Ed.2d 274 (1969). "Courts generally have held that the standard of competence to stand trial parallels the standard of competence to plead guilty." Twelfth Annual Review of CriminalProcedure, 71 Geo.L.J. 339, 540, n. 1348 (1982). See also Annot. 31 A.L.R.Fed. 375 (1977). That test is whether the accused has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States,362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).
Here, Eathorne did not prove that his condition had significantly deteriorated between the time he was found competent to stand trial and the time he pled guilty. Unless the circumstances change, an accused is not entitled to a separate determination of his competence to plead guilty after being found competent to stand trial because the same standard applies. United States ex rel. Heral v. Franzen, 667 F.2d 633,638 (7th Cir. 1981). See also Atwell v. State, 354 So.2d 30
(Ala.Cr.App. 1977), cert. denied, Ex parte Atwell, 354 So.2d 39
(Ala. 1978); Annot. 37 A.L.R.Fed. 356 (1978).
The standard of appellate review of claims of incompetency is set out in 71 Geo.L.J. at 542-43:
 "The determination of competence is a finding of fact that an appellate court will set aside only if clearly erroneous, or for abuse of the trial court's discretion. Defendants often assert their incompetence based on schizophrenia, psychosis, amnesia, or drug dependence. Appellate courts generally reject such claims when the defendant appears to have been competent during trial, the psychiatric evaluations *Page 449 
conflict, or the standard of appellate review prevents such a finding."
Even in a federal forum where the government bears the burden of proving the defendant's competence if the issue is raised before or during trial, where the defendant initially raises the issue in post-conviction proceedings, the burden of proving incompetence shifts to the defendant. Zapata v. Estelle,585 F.2d 750, 752 (5th Cir. 1978). On a petition for writ of error coram nobis, "(t)he petitioner bears the burden of submitting clear, full and satisfactory proof which extends beyond a mere balancing of probabilities to clearly and convincingly satisfy the court on the merits and allegations of the petition."Corley v. State, 397 So.2d 223, 225 (Ala.Cr.App.), cert. denied, 397 So.2d 225 (Ala. 1981).
In denying the petition, the trial judge specifically found that "the Defendant has failed in his burden of proof." We agree.
"Addiction to narcotics does not per se render a defendant incompetent to enter a guilty plea." Jackson v. United States,512 F.2d 772, 773 (5th Cir. 1975). "Even a claim of present drug use does not per se render a defendant incompetent to stand trial." United States v. Metcalfe, 698 F.2d 877, 882 (7th Cir.), cert. denied, ___ U.S. ___, 103 U.S. 1886,76 L.Ed.2d 814 (1983). See also United States v. Helgesen, 669 F.2d 69
(2nd Cir.), cert. denied, 456 U.S. 929, 102 S.Ct. 1978,72 L.Ed.2d 445 (1982); United States v. Robinson, 530 F.2d 677
(5th Cir. 1976); United States v. Williams, 468 F.2d 819 (5th Cir. 1972); United States ex rel. Fitzgerald v. LaVallee,461 F.2d 601 (2nd Cir.), cert. denied, 409 U.S. 885, 93 S.Ct. 121,34 L.Ed.2d 142 (1972).
In reviewing Eathorne's mental capacity, we have examined the totality of the circumstances surrounding the plea.
 "Determination of the defendant's state of mind is certainly critical in determining the voluntariness of a plea. Ford v. United States, 418 F.2d 855 (8th Cir. 1969). See Griffith v. Wyrick, 527 F.2d 109 (8th Cir. 1975). However, to a large extent, it is to be determined by examining the totality of the circumstances surrounding the plea instead of solely on the basis of the defendant's subsequent testimony. United States ex rel. Robinson v. Housewright, 525 F.2d 988 (7th Cir. 1975); Calabrese v. United States, 507 F.2d 259 (1st Cir. 1974); Ford v. United States, supra. Otherwise every plea would be subject to successful attack."
 Toler v. Wyrick, 563 F.2d 372, 373-74 (8th Cir. 1977).
The mere fact that Eathorne was suffering from feelings of guilt or worthlessness at the time he pled guilty is not sufficient in and of itself to render the plea involuntary. "(T)he mere presence of mental illness or other mental disability at the time (the defendant) entered his plea does not necessarily mean that he was incompetent to plead under theDusky test." Bolius v. Wainwright, 597 F.2d 986, 990 (5th Cir. 1979). "The mental illness or disability must have been so debilitating that (the defendant) was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings." Bolius, 597 F.2d at 990.
Here, also, there was conflicting evidence of Eathorne's mental condition at the time he pled guilty and consequently the finding of competency by the trial judge is due to be upheld. Stonecipher v. United States, 409 F.2d 745 (5th Cir. 1969); Taliaferro v. United States, 330 F. Supp. 408 (N.D.Cal. 1971), affirmed, 457 F.2d 504 (9th Cir. 1972). Among other factors, "the fact that the defendant's (own) attorney believes his client is competent and able to assist counsel in defense is significant evidence that he is competent." Metcalfe, 698 F.2d at 882. Eathorne's decision to seek the mercy of the court rather than accept a plea agreement which he deemed too severe and his inquiry of the sentence running concurrent with his prior conviction provides further evidence of his competency.
In our opinion, the record reflects that Eathorne was legally competent when *Page 450 
he pled guilty and that he did so in a voluntary and intelligent manner. "From the rule that a plea must be intelligently made to be valid it does not follow that a plea is vulnerable to later attacks solely because the petitioner or his counsel did not correctly assess every relevant factor which contributed to his decision." Thundershield v. Solem,565 F.2d 1018, 1026 (8th Cir. 1977). In making our determination, we note that the trial judge who accepted Eathorne's guilty plea and sentenced him was also the same judge who presided over the coram nobis hearing. That judge's observation of Eathorne at the guilty plea and coram nobis hearings is entitled to significant weight where the other evidence of his mental condition is conflicting. See United States v. Oliver,626 F.2d 254 (2nd Cir. 1980).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.