MAIN, Judge.
 

 Barbara Ann Roberts appeals her convictions for two counts of murder made capital because the murder occurred during a kidnapping,
 
 see
 
 § 13A-5-40(a)(l), Ala.Code 1975; for intentional murder,
 
 see
 
 § 13A-6-2, Ala.Code 1975; and for first-degree robbery,
 
 see
 
 § 13A-8-41, Ala.Code 1975. She was sentenced, as to the capital-murder convictions, to life imprisonment without the possibility of parole, the sentences to run concurrently; to life imprisonment as to the intentional-murder conviction, the sentence to run concurrently to the sentences for capital murder; and to life imprisonment as to the first-degree-robbery conviction, the sentence also to run concurrently to the other sentences.
 

 I.
 

 Roberts argues that the trial court erred in refusing to continue the jury trial, because, she claims, she was not competent to assist her counsel in preparing her defense or to understand and to consider any plea offers made by the State.
 

 The record indicates that a pretrial hearing was held on Roberts’s motion for a
 
 *1074
 
 continuance, in which defense counsel argued that he was not disputing Roberts’s competence to stand trial but was disputing her competence to consider and either accept or reject the State’s offer of a plea arrangement or settlement.
 
 [1]
 
 Defense counsel argued that physicians had changed the medication Roberts was taking for mental problems and that he did not believe that she could appreciate or understand the ramifications of the plea offer or a guilty plea. The prosecutor responded that because defense counsel was “not sure [Roberts] appreciate^] the situation she [was] in,thoroughly, ... the State would be prepared to leave the offer on the table, and if [defense counsel] wishe[d] to have continued dialog with [the State] over the next couple of days or whatever, [the State] would be more than happy to do that.” (R. 89.)
 

 The trial court determined that the case would remain set for trial unless defense counsel presented further reasons for a continuance. Defense counsel stated that if the doctors were of the opinion that “because of the bottlenecking of the facts or the change in the medicines or whatever reason, that we’re unable to get viable communication at the crucial time, then I feel that a continuance would be in order.” (R. 91.) The trial court then stated to defense counsel that decisions concerning competency to stand trial are governed by Rule 11, Ala.R.Crim.P., and that the court had reviewed the forensic psychiatrist’s report finding Roberts competent to stand trial.
 

 Defense counsel then stated that Roberts was apparently being nonresponsive to Dr. Jason Junkins, who had been treating her, so the family called in Dr. Richard Grant. Defense counsel stated that Roberts told him that “Dr. Grant says there are some issues [with] her bipolar disorder that’s causing things to be taken out of context.... [H]e’s got to get that regulated, not that she can’t stand trial, we’re not using that as our guidepost, we’re talking about the last part of our negotiations stage.” (R. 94-95.)
 

 The trial court postponed any further ruling, stating:
 

 “THE COURT: Well, if I understand it, then, there is not an issue of her competence to stand trial. And while I have not seen a report from either Dr. Junkins or Dr. Grant, given the current state of the file, the argument you’ve made, the motion that’s on the table, I think the case needs to remain scheduled for trial. Now, if you get a report from Grant or Junkins or the two of them and the D.A. wants to cross-examine either or both of those doctors, then I’ll try to schedule some time to do that.”
 

 (R. 95.) Finally, just before the close of the hearing, the prosecutor stated:
 

 “[Prosecutor]: Just based on what we read in the file and what we know of the defendant, we do not anticipate there will be any issues of competency that will need to be addressed by the Court, I think if I hear [defense counsel] right, correctly, there are issues about whether or not she’s really able to significantly comprehend what the offer is and what the ramifications of that offer are, and it might be that it’s more along those lines and as I’ve told the Court and the defense, we will seek to continue to work through those issues with them if they wish and try to get that issue off the table quickly, either resolve it by a clear
 
 *1075
 
 rejection or an understanding that we’ll have a plea, and we’ll let the Court know either way.”
 

 (R. 97-98.)
 

 Three days later, another hearing was held, and neither doctor nor any witness was presented by the defense concerning Roberts’s competency or her ability to understand and appreciate the guilty-plea offer. An unsigned and undated letter was produced that “purport[ed]” to be from Dr. Junkins.
 
 [2]
 
 The prosecutor responded that Dr. Doug McKeown, a certified forensic examiner, found that Roberts was competent, that she could appreciate the consequences involved in the case, and that she could assist her counsel in the trial. The prosecutor also argued that while Dr. McKeown was a certified forensic examiner, Dr. Junkins was a doctor of internal medicine and was not qualified to give an opinion concerning competency. Finally, the prosecutor argued that Dr. Junkins was not present and available to be cross-examined concerning his qualifications or opinions. Moreover, Dr. Grant was not present and had presented no evidence. Finally, the prosecutor stated that the offense had occurred over two years before the hearing and that the alleged change in medication apparently occurred approximately 10 to 14 days before the hearing; thus, the prosecutor argued, the trial, which was set for 11 days after the hearing, should not be continued. The trial court stated that it saw nothing in the letter from Dr. Junkins that “addresses the question of competency to stand trial within the meaning of Rule 11 of the Alabama Rules of Criminal Procedure.” (R. 106.)
 

 Defense counsel responded that as a result of the change in Roberts’s medication, he was unable to have “meaningful conversation with her.” (R. 106.) He stated that his concern was that “at some point later [Roberts] may come back and say, well, that’s not exactly what I understood.” (R. 107.) He did not believe that she could knowingly participate in a guilty plea. Defense counsel argued: “I’m not a doctor or professional psychologist or anything, I’m just basing it on what they have told me and my personal experience with her. So I’m not challenging the competency, I’m just saying we’ve not had any ability in the past, in my opinion, the past couple of weeks, to have meaningful conversation. That’s strictly what this is about. Not about competency.” (R. 107.) The trial court determined:
 

 “The question, then, for me to decide is whether to grant a continuance to give you an opportunity to try to work out a settlement of this case. The case has been pending a long time. I think in many cases, lawyers forget how cruel it is for the families of a victim when cases are postponed and postponed again and postponed yet another time. I don’t think that the mere — that merely because a defendant lacks the competency to enter a plea of guilty rises to the level of incompetency to stand trial, and because I don’t have anything before the Court which satisfies me that she is incompetent to stand trial, I don’t feel like I have any reasonable basis to postpone the case.”
 

 (R. 108-09.)
 
 [3]
 
 The trial court further informed defense counsel that defense coun
 
 *1076
 
 sel could speak to the prosecutor as to any agreement as to a continuance.
 

 The trial commenced 11 days later. Following the jury trial, at the hearing on the motion for a new trial, Roberts raised as error the trial court’s failure to grant her continuance based on her incompetency. The prosecutor noted during the hearing that “[tjhere was no last minute plea offer from the State,” but rather the State had been attempting to discuss a settlement with her for a year and a half. (R. 1491-92.) The prosecutor stated:
 

 “One of the things I think the Court commented on when this issue was actually before the Court right before trial was the observations the Court made of the defendant during the pretrial hearings. And it was clear, I believe to the Court in those comments, from what I recall and I recall from my own participation in them, that Ms. Roberts was a full participant in those proceedings, providing assistance to her counsel, tugging on his sleeve, telling him what to say, feeding him arguments. I think that is contrary to the view that she was incompetent during that time and, of course, the Court will remember on its own the Court observed, but those are my recollections.”
 

 (R. 1502-03.)
 

 The record indicates that Roberts’s motion for continuance was prefaced on her alleged inability to understand or to appreciate the State’s plea offer and to participate in any guilty plea.
 

 “Due process requires that an accused be legally competent to plead guilty.
 
 Chavez v. United States,
 
 641 F.2d 1253, 1255-56 (9th Cir.1981). The plea must be voluntary and intelligent.
 
 Boykin v. Alabama,
 
 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). ‘Courts generally have held that the standard of competence to stand trial parallels the standard of competence to plead guilty.’
 
 Twelfth Annual Review of Criminal Procedure,
 
 71 Geo. L.J. 339, 540, n. 1348 (1982). See also Annot. 31 A.L.R. Fed. 375 (1977). That test is whether the accused has ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.’
 
 Dusky v. United States,
 
 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).”
 

 Eathorne v. State,
 
 448 So.2d 445, 448 (Ala.Crim.App.1984). Thus, the same guidelines or standard applies to determining competency to stand trial as does to determining competence to plead guilty.
 

 “ ‘A defendant is mentally incompetent to stand trial or to be sentenced for an offense if that defendant lacks sufficient present ability to assist in his or her defense by consulting with counsel with a reasonable degree of rational understanding of the facts and the legal proceedings against the defendant.’ Rule 11.1, Ala.R.Crim.P. ‘The defendant bears the burden of persuading the court that a reasonable and bona fide doubt exists as to the defendant’s mental competency, and this is a matter within the discretion of the trial court.’
 
 Cliff v. State,
 
 518 So.2d 786, 790 (Ala.Crim.App.1987). ‘In order to overturn the trial judge’s competency determination, we must find that the judge abused his or her discretion.’
 
 Tankersley v. State, 724
 
 So.2d 557, 565 (Ala.Crim.App.1998). ‘“In the absence of any evidence, the mere allegations by counsel that the defendant is incompetent to stand trial do not establish reasonable grounds to doubt the defendant’s sanity and warrant an inquiry into his competency.” ’
 
 Id.,
 
 quoting
 
 Cliff,
 
 518 So.2d at 791.”
 

 
 *1077
 

 Hodges v. State,
 
 926 So.2d 1060, 1068-69 (Ala.Crim.App.2005). Roberts’s claim concerned her understanding of the consequences of accepting the State’s plea offer and thereby pleading guilty should, therefore, be evaluated by the same guidelines as her competency to stand trial.
 

 As argued by the prosecutor and stated by the trial court, the only evidence going to Roberts’s competency, other than defense counsel’s professions that Roberts was incompetent and difficult to communicate with, was a letter from a doctor of internal medicine that made no direct assertion of her ability to assist counsel in her defense or to understand basic legal proceedings.
 

 “Generally, defense counsel’s remarks concerning his inability to communicate with his client are not entitled to any conclusive effect with respect to the issue of whether the defendant is competent to stand trial, although they should be considered by the court along with any other evidence of incompetency.
 
 Thibodeaux v. State,
 
 Tex.Cr.App., 505 S.W.2d 260 (1974);
 
 Drope v. Missouri,
 
 420 U.S. 162, 175, 95 S.Ct. 896, 906, 48 L.Ed.2d 103 (1975);
 
 People v. Laudermilk,
 
 67 Cal.2d 272, 61 Cal.Rptr. 644, 481 P.2d 228 (1967);
 
 Brown v. State,
 
 346 N.E.2d 559 (Ind.1976). See also
 
 Goulden v. State,
 
 53 AlaApp. 276, 299 So.2d 321 (1974);
 
 Moore v. State,
 
 52 Ala.App. 179, 290 So.2d 246 (1974).”
 

 Atwell v. State,
 
 354 So.2d 30, 36 (Ala.Crim. App.1977) (holding that despite counsel’s continuing opinion that the defendant was insane, there was no evidence to indicate that the defendant’s mental condition at the time of the trial was different from what it was at the time of the sanity inquisition, citing
 
 United States v. Ives,
 
 504 F.2d 935 (9th Cir.1974)).
 
 See Nicks v. State,
 
 783 So.2d 895, 912-14 (Ala.Crim.App.1999).
 

 The letter confirmed that Roberts’s medications for her mental illness had been changed and needed to be regulated and that she may have difficulty understanding the complexities of her decision. ‘“[T]he law is clear that “[pjroof of the incompetency of an accused to stand trial involves more than simply showing that the accused has mental problems or psychological difficulties.” ’
 
 Thomas v. State,
 
 766 So.2d 860, 881 (Ala.Crim.App.1998), aff'd, 766 So.2d 975 (Ala.2000), overruled on other grounds by
 
 Ex parte Taylor,
 
 10 So.3d 1075 (Ala.2005), quoting
 
 Bailey v. State,
 
 421 So.2d 1364, 1366 (Ala.Cr.App. 1982).”
 
 Connally v. State,
 
 33 So.3d 618, 621-22 (Ala.Crim.App.2007). “Even a claim of present drug use does not, per se, render a defendant incompetent to stand trial. See
 
 United States v. Robinson,
 
 [530 F.2d 677 (5th Cir.1976) ];
 
 United States v. Williams,
 
 468 F.2d 819 (5th Cir.1972);
 
 Eathorne [v. State,
 
 448 So.2d 445 (Ala.Crim.App.1984)].”
 
 Stephens v. State,
 
 512 So.2d 782, 785 (Ala.Crim.App.1986), re versed on other grounds,
 
 Ex parte Stephens,
 
 512 So.2d 786 (Ala.1987).
 
 See also Eathorne v. State,
 
 448 So.2d at 449 (“The mere fact that Eathorne was suffering from feelings of guilt or worthlessness at the time he pled guilty is not sufficient in and of itself to render the plea involuntary. ‘(T)he mere presence of mental illness or other mental disability at the time (the defendant) entered his plea does not necessarily mean that he was incompetent to plead under the
 
 Dusky [v. United States,
 
 362 U.S. 402 (1960),] test.’[
 
 4
 
 ]
 
 Bolins v. Wainwright,
 
 597 F.2d 986, 990 (5th Cir.
 
 *1078
 
 1979). ‘The mental illness or disability-must have been so debilitating that (the defendant) was unable to consult with his lawyer and did not have a rational and factual understanding of the proceedings.’
 
 Bolius,
 
 597 F.2d at 990.”).
 

 Here, Roberts had filed a “Motion to Continue Arraignment and Motion for Psychological Testing” approximately five months before the hearing on the motion for a continuance of the jury trial, alleging that she lacked sufficient ability to assist in her defense. In response that motion, the trial court continued the case to provide an opportunity for Roberts to be psychologically evaluated. (C. 179.) Subsequently, the trial court also ordered an evaluation of her competency to stand trial and her mental state at the time of the offense. (C. 2329.) The report filed pursuant to this evaluation indicated that Roberts was competent to stand trial:
 

 “Ms. Roberts has a reasonable ability to appraise available legal defenses understanding the consequences for a guilty and not guilty plea and she also understood a mental state defense when that was explained to her. She demonstrated an understanding of legal strategies such as a plea bargain when those were explained to her as well. The Defendant appears fully capable of relating to defense counsel and also providing assistance in challenging prosecution witnesses. Based on current assessment there does not appear to be a likelihood of unmanageable behavior in the courtroom but that would not preclude the possibility of becoming somewhat emotional at times. The Defendant does appear capable of testifying in a relevant fashion if the need arises. All in all, the Defendant appears capable of assisting defense counsel and also assuming the role of a Defendant in a judicial proceeding.”
 

 (C. 2868-69.)
 

 This report was dated approximately nine months before the hearing on the motion to continue and was available to the trial court. Based on the evidence Roberts presented at the hearing, she did not prove that her condition had significantly changed since that earlier evaluation. As stated in
 
 Eathorne v. State,
 
 supra:
 

 “Here, Eathorne did not prove that his condition had significantly deteriorated between the time he was found competent to stand trial and the time he pled guilty. Unless the circumstances change, an accused is not entitled to a separate determination of his competence to plead guilty after being found competent to stand trial because the same standard applies.
 
 United States ex rel. Heral v. Franzen,
 
 667 F.2d 633, 638 (7th Cir.1981). See also
 
 Atwell v. State,
 
 354 So.2d 30 (Ala.Cr.App.1977), cert. denied,
 
 Ex parte Atwell,
 
 354 So.2d 39 (Ala.1978); Annot. 37 A.L.R. Fed. 356 (1978).”
 

 Eathorne v. State,
 
 448 So.2d at 448.
 
 See also White v. State,
 
 346 So.2d 22, 25 (Ala.Crim.App.1977)(holding that “the trial judge did not err in finding that, based on the previous verdict of competency, the assertions of the appellant’s counsel did not raise a bona fide doubt as to the appellant’s competency to stand trial”).
 

 “In order to overturn the trial judge’s competency determination, we must find that the judge abused his or her discretion.”
 
 Tankersley v. State,
 
 724 So.2d 557, 565 (Ala.Crim.App.1998). Reviewing the entire record, including the reports and hearings, we cannot say that the trial court abused its discretion.
 
 Compare Eathorne v. State,
 
 448 So.2d at 449 (“In reviewing Eathorne’s mental capacity, we have examined the totality of the cir
 
 *1079
 
 cumstances surrounding the plea. ‘Determination of the defendant’s state of mind is certainly critical in determining the vol-untariness of a plea.
 
 Ford v. United States,
 
 418 F.2d 855 (8th Cir.1969).
 
 See Griffith v. Wyrick,
 
 527 F.2d 109 (8th Cir.1975). However, to a large extent, it is to be determined by examining the totality of the circumstances surrounding the plea instead of solely on the basis of the defendant’s subsequent testimony.
 
 United States ex rel. Robinson v. Housewright,
 
 525 F.2d 988 (7th Cir.1975);
 
 Calabrese v. United States,
 
 507 F.2d 259 (1st Cir.1974);
 
 Ford v. United States,
 
 supra. Otherwise every plea would be subject to successful attack.’
 
 Toler v. Wyrick,
 
 563 F.2d 372, 373-74 (8th Cir.1977).”).
 

 II.
 

 Roberts argues that her trial counsel was ineffective for failing to provide sufficient evidence to support her motion for a continuance and for failing to pursue a defense of not guilty by reason of mental disease or defect.
 

 A.
 

 Roberts’s trial counsel was not ineffective for failing to present the testimony of two doctors in support of the motion for a continuance. Roberts is referring to the doctors who had examined her and who had allegedly determined that she was incompetent to consider and participate in the plea negotiations and plea offer. She further alleges that her counsel should have requested that she be reassessed as to her competency. Had her counsel done so, she argues, the result of the proceedings might have been different. Specifically, she contends that had her reassessment shown that she was incompetent to consider the plea offer, she could have been sentenced to life imprisonment with the possibility of parole pursuant to the plea. Moreover, if she had been found incompetent to stand trial and the proceedings had been undertaken with her full participation, “the evidence as a whole would have been different, leading to a different verdict by the jury.” (Roberts’s brief, at 52.)
 

 At the hearing on the motion for a new trial, Roberts raised the issue of ineffectiveness concerning her counsel’s alleged failure to provide the evidence necessary to support the motion for a continuance. The prosecutor argued that the contention was
 

 “predicated on the idea that but for [defense counsel] not doing X, Y, and Z, Roberts would have pleaded guilty.... Understand or communicate or cooperate on perhaps a last minute plea offer from the State. There was no last minute plea offer. For a year and a half we were prepared to discuss some settlement that may arise from her remorse, acceptance of responsibility. And what has never changed from the moment of her arrest until today is that she has shown not one iota of remorse for the death of Darlene Roberts. It is her obstinanee that causes her to keep not having things done. Because she’s competent, it’s hard to find a doctor to come up here and say that she isn’t. Because she’s obstinate, it’s hard for people to communicate with her.”
 

 (R. 1491-92.) The prosecutor then read from a letter Roberts wrote to the trial court praising her counsel’s performance. As to the claim that counsel should have had her competency reassessed, the prosecutor stated that Roberts was clearly “in full possession of [her] facilities” and that her problem was obstinanee. (R. 1506.)
 

 The record reveals that trial counsel argued that he had wanted to present the testimony of the two doctors — Dr. Junkins and Dr. Grant at the hearing on the mo
 
 *1080
 
 tion for a continuance but indicated that it might be difficult to do so due to their schedules. The trial court acquiesced in that comment. The letter from Dr. Jun-kins explained that he was unable to be present for the hearing because his daughter was having surgery. Trial counsel was able to present the letter from Dr. Junkins and fully argued his claim of Roberts’s alleged incompetency.
 

 The record fails to disclose that Roberts’s trial counsel was ineffective in his attempts to present the testimony of the doctors to support the motion for a continuance. Further, there is no indication that Roberts was prejudiced by this failure. The trial court reviewed the letter sent by Dr. Junkins, which also implied that the other doctor, Dr. Grant, would most likely draw the same conclusions concerning Roberts’s medication. Nor is there any indication from the transcript of the trial proceedings that Roberts was unable to participate in her defense. The prosecutor stated that she visibly assisted and conferred with her counsel. Moreover, the trial did not commence until the week following the hearing, so there was time for the new medications to be regulated.
 

 “The United States Supreme Court, in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-pronged test to determine whether counsel was ineffective.
 

 “‘A convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.’
 

 “Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064. To establish the prejudice component, ‘the defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ 466 U.S. at 694, 104 S.Ct. at 2068.
 

 “ ‘Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.
 
 Cf. Engle v. Isaac,
 
 456 U.S. 107, 133-34, 102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defen
 
 *1081
 
 dant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” See
 
 Michel v. Louisiana, supra,
 
 350 U.S. [91] at 101, 76 S.Ct. [158] at 164, [100 L.Ed. 83 (1955) ].’
 

 “466 U.S. at 689, 104 S.Ct. at 2065. [Roberts] is required to ‘affirmatively prove prejudice’ in making claims that his attorney’s performance was deficient. 466 U.S. at 693, 104 S.Ct. at 2067.”
 

 Nicks v. State,
 
 783 So.2d 895, 918-919 (Ala.Crim.App.1999).
 

 Here, Roberts has failed to prove that her counsel was ineffective in that he allegedly provided insufficient evidence to support the motion for a continuance.
 
 See Herring v. Secretary, Dep’t of Corr.,
 
 397 F.3d 1338, 1348-50 (11th Cir.2005) (rejecting ineffective-assistance claim that Herring’s counsel did not conduct a meaningful investigation into his mental condition where Herring’s mother was only the mitigation witness and counsel did not introduce evidence from hospital records in counsel’s possession showing defendant’s brain damage and mental retardation or call psychologist who evaluated defendant pretrial as having dull normal intelligence; these were tactical decisions).
 

 B.
 

 Roberts has also failed to meet her burden of proof under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to support her claim that her trial counsel was ineffective for failing to pursue a defense of not guilty by reason of mental disease or defect.
 

 The record indicates that trial counsel withdrew Roberts’s plea of not guilty by reason of mental disease or defect after she was evaluated pursuant to a motion that he had filed. The forensic psychiatrist determined that, although she had a long history of mental-health-related issues and particularly suffered from bipolar disease and depression, she showed no signs that her cognitive skills were impaired. As to her mental state at the time of the offense, the report from the examiner stated:
 

 “The Defendant at this time is able to provide extensive details and information associated with events and behaviors leading up to the index crime and also her relationship with the victim. She reports that the victim had been calling and harassing her for a long period of time. She is able to provide extensive details and information about her activities and behavior in the time frame contiguous with the. index crime. No impairment of reality contact is noted and no aberrations of thought or cognitive impediments are noted that would have interfered with her ability to appreciate the nature and quality of her actions at that time.”
 

 (C. 2370.)
 

 The record indicates that Roberts stalked the victim and, at the time of the offense, laid in wait for the victim to drive by, concealed her identity with sunglasses, a hooded sweat-shirt, and a baseball hat with her hair pulled up under the hat. She also wore a surgical mask to conceal her nose and mouth. She remained in the vehicle while her accomplice stood outside with the hood of the vehicle raised, pretending to need assistance. When the victim stopped to render aid, Roberts’s accomplice attempted to bind and gag her, but she escaped. Roberts chased the victim on foot, while her accomplice took up chase using the victim’s vehicle. Roberts jumped into the vehicle, and the victim was eventually found and shot.
 

 
 *1082
 
 “ ‘ “A distinction must be made between a
 
 failure
 
 to investigate the mental history of an accused and the rejection of insanity as a defense after proper investigation. ‘An attorney with considerable experience in criminal matters and, therefore, in dealing with a wide range of people ... may be presumed to have some ability to evaluate the mental capacity of his client.’
 
 United States ex rel. Rivera v. Franzen,
 
 594 F.Supp. 198, 202 (N.D.Ill.1984). ‘As a practical matter, when deciding whether to present an insanity defense, the criminal defendant’s lawyer is truly the final psychiatrist. It is not the role of a court to doubt his judgment.... Trial counsel may not reject the insanity defense ‘ “without pursuing the basic inquiries necessary to evaluate its merits intelligently.” ’
 
 Rivera,
 
 594 F.Supp. at 203. See also
 
 Martin v. Maggio,
 
 711 F.2d 1273, 1280 (5th Cir.1983), rehearing denied, 739 F.2d 184 (5th Cir.), cert. denied, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984);
 
 Pickens v. Lockhart,
 
 714 F.2d 1455, 1467 (8th Cir.1983) (‘It is only
 
 after
 
 a full investigation of
 
 all
 
 the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client’s case’).”
 

 “
 
 ‘Dill v. State,
 
 484 So.2d 491, 498 (Ala.Cr.App.1985) (emphasis original). See also
 
 Roy v. State,
 
 680 So.2d 936 (Ala.Cr.App.1996).’ ”
 

 Payne v. State,
 
 791 So.2d 383, 401 (Ala.Crim.App.1999), affirmed,
 
 Ex parte Payne,
 
 683 So.2d 458 (Ala.1996), quoting,
 
 Samra v. State,
 
 771 So.2d 1108, 1120 (Ala.Crim.App.1999).
 

 Here, although Roberts had a history of mental problems, her actions did not indicate that she was legally insane at the time of the offense and a report by a forensic psychiatrist confirmed this assessment. Defense counsel introduced expert testimony as to her mental illness for purposes of mitigation during the penalty phase of her trial, and the trial court found the existence of the mitigating factor that her capacity to appreciate the criminality of her conduct or to conform it to the requirements of law was substantially impaired. § 13A-5-51(6), Ala.Code 1975. The trial court also found the existence of the mitigating factor that the capital offense was committed while she was under the influence of extreme mental or emotional disturbance. § 13A-5-51(2), Ala.Code 1975. The trial court noted that these findings did not dispute or contradict the expert’s finding in his report concerning Roberts’s mental condition at the time of the offense, as the latter is based on the legal standard for insanity, which is different. Thus, the trial court ultimately determined that, despite the jury’s recommendation of a sentence of death, the mitigating factors outweighed the aggravating factors and sentenced Roberts to life imprisonment without the possibility of parole. Roberts’s trial counsel was thus effective in presenting sufficient evidence to persuade the judge that the lesser sentence was appropriate to her case.
 

 “‘When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel’s conduct was appropriate and reasonable.
 
 Luke v. State,
 
 484 So.2d 531, 534 (Ala.Cr.App.1985).’
 
 Hallford v. State,
 
 629 So.2d 6, 9 (Ala.Cr.App.1992).”
 
 State v. Tarver,
 
 629 So.2d 14,17 (Ala.Cr.App.1993). Here, in light of the evidence and expert opinion, trial counsel made a tactical decision to withdraw the plea of not guilty by reason of mental disease or defect. The evidence against Roberts was overwhelming, and trial counsel was able to use the
 
 *1083
 
 evidence concerning her history of mental disease to reduce her sentence from the advisory jury verdict of death to life imprisonment without parole. Thus, Roberts has failed to show that she suffered prejudice as the result of trial counsel’s performance.
 

 III.
 

 Although not raised as an issue on appeal, Roberts’s convictions and sentences violate the principles of double-jeopardy and affected the trial court’s jurisdiction. She was convicted of two counts of capital murder, as charged in Counts 2 and 3 of her indictment, for the murder of Darlene Roberts during a kidnapping. Count 2 charged that she caused Darlene Roberts’s death by shooting her with a shotgun during her abduction or attempted abduction with the intent to inflict injury upon her or to violate her sexually. Count 3 charged that she caused Darlene Roberts’s death by shooting her with a shotgun during her abduction or attempted abduction with the intent to terrorize her. These convictions are based on the same offense committed by alternative means.
 

 In
 
 Davis v. State,
 
 42 So.3d 162, 169 (Ala.Crim.App.2009), Davis was charged with, convicted of and sentenced for two counts of kidnapping as to each of three victims and this court determined that his right to be free from double jeopardy was violated. This Court stated:
 

 “As previously noted, a kidnapping is complete when a victim is abducted with the intent to secrete the victim or deadly force is used or the perpetrator threatens to use such force. Commentary, § 13A-6-43, Ala.Code 1975. ‘The prime ingredient is the taking or detaining of a person against his will and without authority of law.’
 
 Id.
 

 “Because multiple punishments were imposed under separate subsections of § 13A-6-43, Ala.Code 1975, ‘when the actions described in each of those subsections [were] based on the same conduct of the accused against the same victim,’ double-jeopardy principles were violated.
 
 Egbuonu v. State,
 
 993 So.2d 35, 43 (Ala.Crim.App.2007). See also
 
 Ex parte Robey,
 
 920 So.2d 1069, 1070 (Ala.2004); and
 
 Ex parte Rice,
 
 766 So.2d 143, 148 (Ala.1999).”
 

 Davis v. State,
 
 42 So.3d at 169. Thus, Davis’s convictions for multiple counts of the same offense by alternate means violated his rights to be free from double jeopardy.
 

 Here, Roberts’s convictions for the murder of Darlene Roberts during her kidnapping by alternate means of kidnapping violated her rights to be free from double jeopardy.
 

 Moreover, Roberts’s conviction for intentional murder, a lesser-included offense of capital murder under count 1 of the indictment, was based on the same murder. Therefore, her conviction for intentional murder also violated her rights under the Double Jeopardy Clause because they were convictions for both a greater and a lesser-included offense.
 
 See Deardorff v. State,
 
 6 So.3d 1205, 1215 (Ala.Crim.App.2004) (convictions for capital murder for murder during a robbery and for first degree theft of property based on the same theft underlying the robbery in the capital offense violated double-jeopardy principles).
 

 “Since the decision in
 
 Rolling [v. State,
 
 673 So.2d 812 (Ala.Crim.App.1995) ], this Court has continued to hold that certain double-jeopardy claims implicate the jurisdiction of the trial court and, therefore, are not subject to waiver. See, e.g.,
 
 Powell v. State,
 
 854 So.2d 1206 (Ala.Crim.App.2002);
 
 Deas v. State,
 
 844
 
 *1084
 
 So.2d 1286 (Ala.Crim.App.2002);
 
 Hale v. State,
 
 831 So.2d 639 (Ala.Crim.App.2001);
 
 Peterson v. State,
 
 842 So.2d 734, 735 (Ala.Crim.App.2001) (opinion on return to remand);
 
 Grayson v. State,
 
 824 So.2d 804 (Ala.Crim.App.1999), aff'd, 824 So.2d 844 (Ala.2001);
 
 Simmons v. State,
 
 797 So.2d 1134 (Ala.Crim.App.1999);
 
 Loggins v. State,
 
 771 So.2d 1070 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000);
 
 Lorance v. State,
 
 770 So.2d 644 (Ala.Crim.App.1999);
 
 Borden v. State,
 
 711 So.2d 498 (Ala.Crim.App.1997), aff'd, 711 So.2d 506 (Ala.1998); and
 
 Dozier v. State,
 
 706 So.2d 1287 (Ala.Crim.App.1997). Like
 
 Rolling,
 
 most of those decisions involved simultaneous convictions for both a greater and a lesser-included offense.”
 

 Straughn v. State,
 
 876 So.2d 492, 508 (Ala.Crim.App.2003).
 
 See also, Ex parte Benefield,
 
 932 So.2d 92, 93 (Ala.2005) (Bene-field’s claim that he could not be convicted of both first-degree rape and the lesser-included offense of first-degree sexual abuse arising out of the same act presented a jurisdictional issue).
 

 ‘ “Section 13A-l-8(b)(2), Ala.Code 1975, establishes:
 

 “ ‘ “When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if ... [o]ne offense is included in the other, as defined in Section 13A-1-9 [the lesser-included offense statute]....”
 

 “ ‘As we stated in
 
 Adams v. State,
 
 955 So.2d 1037 (Ala.Crim.App.2003):
 

 ““‘A defendant cannot be convicted of both a capital offense and a lesser offense that is included in the capital charge. See
 
 Mangione v. State,
 
 740 So.2d 444 (Ala.Crim.App.1998);
 
 Borden v. State,
 
 711 So.2d 498 (Ala.Crim.App.1997), aff'd, 711 So.2d 506 (Ala.1998). As this Court stated in
 
 Mangione:
 

 “ ‘ “ ‘While the appellant was properly charged with the two capital offenses, see
 
 Borden,
 
 711 So.2d at 503-04, n. 3, and both offenses were properly submitted to the jury, the prohibition against double jeopardy was violated when the appellant was convicted of the capital offense of murder during the course of a kidnapping under Count I of the indictment and also was convicted of the lesser-included offense of intentional murder under Count II of the indictment, because the “same murder was an element of the capital offense and the intentional murder conviction.”
 
 Borden,
 
 711 So.2d at 503. See also
 
 Coral v. State,
 
 628 So.2d 954, 958 (Ala.Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) (holding that the defendant’s conviction of the lesser-included offense of intentional murder under a count alleging the capital offense of murder-robbery and his conviction of the capital offense of murder-burglary violated the principles of double jeopardy where the same murder was an element of both convictions).’
 

 “ ‘ “740 So.2d at 449.” ’ ”
 

 Lewis v. State,
 
 57 So.3d 807, 819 (Ala.Crim.App.2009), quoting
 
 White v. State,
 
 900 So.2d 1249, 1270 (Ala.Crim.App.2004).
 

 For this reason, this cause must be remanded for the entry of a new order.
 
 See Ex parte Rice,
 
 766 So.2d 143, 152-53 (Ala. 1999)(“[A]n appellate court’s vacating one of [the defendant’s] convictions and its corresponding sentence would have the effect,
 
 *1085
 
 albeit unintended, of nullifying a part of the jury’s verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges [the defendant] guilty of [the victim’s] murder and sentences him for that single offense.”).
 

 Thus, this cause is remanded for the trial court to enter a new order adjudging Roberts guilty of a single count of capital murder for the murder during a first-degree kidnapping of Darlene Roberts and of first-degree robbery as found by the jury and included in count one of the indictment. Due return shall be filed with this Court within 35 days of the date of this opinion.
 

 REMANDED WITH DIRECTIONS.
 
 *
 

 KELLUM, J., concurs. WISE, P.J., and WELCH and WINDOM, JJ., concur in the result.
 

 [1]
 

 . The State offered Roberts the opportunity to plead guilty to murder and kidnapping and to be sentenced to concurrent sentences of life imprisonment in exchange for testimony against her accomplice.
 

 [2]
 

 . Subsequently, during the guilt phase of the trial, Roberts presented the testimony of Dr. Junkins and, during an in camera discussion, authenticated the letter as having been written by Dr. Junkins. (R. 1092-96.)
 

 [3]
 

 . The letter from Dr. Junkins states that Roberts "is most likely unable to make any meaningful decisions, understand or appreciate the severity of the decision and appears to be completely unable to appreciate the complexities of that decision.” (C. 2817.)
 

 [4]
 

 . The
 
 Dusky
 
 test requires that an accused has sufficient ability to consult with his or her counsel with rational understanding and that the accused has a rational and factual understanding of the proceedings against him or her.
 

 *
 

 Note from the reporter of decisions: On August 13, 2010, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On September 24, 2010, that court denied rehearing, without opinion. On November 12, 2010, the Supreme Court denied certiorari review, without opinion (1100039).